**Dexter David ALLEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–00–00725–CR.**

Court of Appeals of Texas,
Houston(1st Dist.).

March 1, 2001.

Kyle B. Johnson, Houston, TX, for Appellant.

John B. Holmes, Rikke Burke Graber, Houston, TX, for the State.

Panel consists of Chief Justice SCHNEIDER, and Justices TAFT and BRISTER.

**OPINION**

TAFT, Justice.

A jury found appellant, Dexter David Allen, guilty of delivery of cocaine weighing less than one gram, a state jail felony, and assessed his punishment at six months in state jail. We address whether the evidence is factually sufficient to support the jury's verdict. We affirm.

**Facts**

**A. State's Evidence**

On January 25, 2000, Houston Police Officer Chris Massey was working undercover in Southwest Houston. The area in which Officer Massey had to work has a reputation for a high degree of drug trafficking. A member of the police department's narcotics division, Officer Massey was in the area to purchase narcotics and identify and arrest drug dealers frequenting the area. As Officer Massey drove around the area in an unmarked van and in plain clothes, he spotted appellant walking down the street. Officer Massey waved at appellant to get him to approach the van. Officer Massey's purpose for initiating contact with appellant was to determine if he knew where to find a man named "Andre," who was a suspected drug dealer in the area.

When Officer Massey pulled over, appellant approached the passenger side window of the van. Officer Massey asked appellant if he had seen "Andre," to which appellant inquired, "what do you need with Andre?"[1] Officer Massey then told appellant that he was looking for a "20," which is street slang for $20 worth of crack cocaine. According to Officer Massey, appellant then got into the van, saying, "Let's go. Let me in."[2] Once inside the van, appellant directed Officer Massey to a separate location.

As Officer Massey and appellant were driving, appellant noticed a friend of his walking down the street and waved at the man to get his attention. Appellant instructed Officer Massey to pull over to the side of the road so appellant could talk to this friend, a man named Gerald Johnson. Officer Massey testified that, when Johnson approached the van, appellant told Johnson "this guy here is looking for some cheese," which is street slang for crack cocaine.[3] At that point, appellant directed Johnson to get into the van, which he did.

Officer Massey testified that, as all three men sat in the van (which remained stationary), Johnson sold him a rock of crack cocaine for $20. After the first delivery was made, Johnson asked Officer Massey if he wanted another rock of cocaine, which Officer Massey accepted for an additional $20. During the second transaction, appellant remarked that "$10 of that was going to be his," meaning that appellant wanted $10 of the $40 Officer Massey had

---

1. Officer Massey admitted at trial his police report of the incident did not mention the conversation with appellant about "Andre."

2. Officer Massey admitted at trial that his police report of the incident did not mention these specific comments by appellant. The specific comment Officer Massey attributed to appellant in his police report was "Let's go to Gessner (Street)."

3. Officer Massey admitted at trial that his police report of the incident did not mention this comment by appellant.

given Johnson for the cocaine. Johnson assured appellant that he would split the money from the transaction with him.

According to Officer Massey, after the transaction between him and Johnson was completed, appellant wanted to go back to Gessner Street, and asked Officer Massey if he wanted to buy some "weed." Officer Massey declined and told appellant that he had to go back to work, at which point appellant and Johnson left the van. As appellant and Johnson walked directly across the street to a Texaco station, Officer Massey radioed a description of them to police officers waiting to arrest them. Arresting officer John Parker, who was in uniform, observed appellant just inside the front door of the Texaco station when he arrived in his patrol car. Appellant appeared to say something to Johnson, who was in the station with him, before appellant left the store and was placed under arrest. Johnson was also arrested at the Texaco station. The money from the sale was found in a trash can inside the station.

## B. Appellant's Evidence

Appellant presented his case through his testimony and Gerald Johnson's. Appellant claimed that when he made initial contact with Officer Massey in the van, Massey asked appellant if he had any cocaine to sell, to which appellant responded, "I do not mess with those things." [4] Officer Massey then asked appellant if he knew anybody in the area from whom he could purchase cocaine, to which appellant responded, "No, sir. I'm just walking the street to the bus stop. I'm seeking a ride. Can you give me a ride?"

Appellant claimed Officer Massey agreed to give him a ride and, as they were driving, appellant heard his name called from someone on the street. Appellant turned to see his friend Gerald Johnson waving at him, at which point appellant asked Officer Massey to stop the van. Johnson approached the van when Officer Massey and appellant pulled over. Officer Massey repeatedly asked appellant if Johnson had any cocaine, to which appellant responded "That is not the dude. He doesn't sell drugs. Me and this dude do music together." [5]

When Johnson arrived at the passenger side window of the van, appellant got out of the vehicle and greeted Johnson. During this time, Officer Massey continued to ask appellant if Johnson had any drugs, to which appellant continued to respond that Johnson "doesn't sell no drugs." At that point, Johnson interrupted the colloquy between appellant and Officer Massey and asked Officer Massey "What do you want?" When Officer Massey stated that he wanted $20 worth of crack cocaine, Johnson climbed into the van to make the transaction. Appellant claimed he remained out of the van the entire time it took Officer Massey and Johnson to complete the drug transaction. [6]

Johnson corroborated appellant's testimony that appellant was not present inside the van during the drug transaction and remained outside from the time that Johnson got into the van until the sale was completed. [7] Johnson maintained appellant did not get back into the van until the transaction was completed, and did so only because he still needed a ride. Officer Massey stated, however, that he had to go back to work and could no longer give appellant a ride. According to Johnson, Officer Massey offered appellant money before he exited the van but appellant refused it, saying that all he needed was a

---

4. The State was permitted, over objection, to introduce evidence of a prior conviction of appellant for possession of marihuana in Hardin County in 1998.

5. Appellant and Johnson perform music together on a regular basis.

6. Appellant was "mad" at Johnson for selling the drugs to Officer Massey.

7. Johnson gave this testimony *after* he had already been convicted for his role in the transaction. Furthermore, Johnson was appellant's friend and music partner.

ride.[8] Appellant then left the van and walked across the street to the Texaco station with Johnson, where they were both arrested a short time later.

## Factual Sufficiency

In his sole point of error, appellant challenges the judgment of the court below based on factual insufficiency of the evidence to support his conviction. Appellant argues the State's evidence was so weak, or so overwhelmed by the evidence of the defense, that the jury's verdict on guilt was based on factually insufficient evidence. Under the factual sufficiency standard, we determine "whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *King v. State*, 29 S.W.3d 556, 563 (Tex.Crim.App. 2000).

A review of the evidence offered against appellant at trial does not convince us that "proof of guilt is so obviously weak as to undermine confidence in the jury's determination," as dictated by *King*. Although appellant's testimony at trial was the opposite of Officer Massey's, it did not carry much weight with the jury, presumably because of the likelihood of a self-serving set of facts. We will defer to the jury's determination of the efficacy of appellant's testimony because the jury is in the best position to judge of the weight and credibility of testimony offered at trial. *See Santellan v. State*, 939 S.W.2d 155, 164 (Tex.Crim.App.1997).

That Johnson testified in favor of appellant does not carry much weight. Not only were Johnson and appellant friends and business associates, but Johnson had nothing to lose by testifying for appellant, having already been convicted for his role in the incident that led to this case. Nor may we say that the testimony of Officer Massey lacked credibility to the point that his testimony was insufficient to convict appellant. Although Officer Massey's police report omitted certain statements and facts, he explained that the report was a compilation of his "field notes" from that day and not an "exact diary of what happened." While some of the omissions were material, we are not convinced they indicated a lack of foundation for the State's case.

We overrule appellant's sole point of error.

## Conclusion

We affirm the judgment of the trial court.

---

**8.** Officer Massey never testified that he offered any money to appellant.