Opinion issued February 1, 2007






 











In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00639-CR






TONI NIKEL GOOD, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 344th District Court

Chambers County, Texas

Trial Court Cause No. 12587







MEMORANDUM OPINION ON 

PETITION FOR DISCRETIONARY REVIEW


 In light of the petition for discretionary review filed by appellant, we withdraw
our previous opinion and judgment that issued October 19, 2006. See Tex. R. App.
P. 50. We substitute the following opinion in its stead. 

 After a bench trial, appellant, Toni Nikel Good, was found guilty of unlawful
possession of cocaine weighing 400 grams or more with intent to deliver. See Tex.
Health & Safety Code Ann. § 481.112 (Vernon 2003). The trial court assessed
appellant's punishment at 15 years' confinement and a $1 fine. In four points of
error, appellant contends that (1) the evidence was legally and factually insufficient
to sustain her conviction and (2) the trial court abused its discretion by denying
appellant's request to set aside the finding of guilt due to the State's failure to
disclose exculpatory evidence. 

 We affirm. 

BACKGROUND

 On July 29, 2002, Texas Department of Public Safety (DPS) Lieutenant J.
Holland observed appellant erratically driving a white van on Interstate 10. 
According to Lieutenant Holland, the van traveled approximately 200 yards while
partially on the highway's shoulder and crossed over the center stripe numerous
times. Upon observing that a young child was sitting across appellant's chest,
Lieutenant Holland activated his emergency lights to initiate a traffic stop. Appellant
failed to pull over immediately, instead traveling slowly along the interstate's
shoulder for approximately one-quarter mile before coming to a stop. 

 Lieutenant Holland approached the driver side of the vehicle, identified himself
as a police officer, and asked appellant to step to the rear of the van. Appellant did
not immediately comply, and Lieutenant Holland repeated his instructions. Appellant
then exited the van. As she was doing so, Lieutenant Holland detected the odor of
marijuana emanating from appellant. Appellant indicated that she did not have her
driver's license and that the van was rented. Lieutenant Holland testified that
appellant became extremely nervous during their interaction. According to
Lieutenant Holland, "[She] was actually shaking. Her voice was trembling." 
Appellant struggled to spell her last name audibly after being asked to do so by
Lieutenant Holland. Becoming suspicious that she was engaged in criminal activity,
Lieutenant Holland asked appellant where she was traveling from. Appellant first
responded that she had been in Houston for one day. She then stated that she had
been in Houston for three days visiting her family. Appellant told Lieutenant Holland
that she had stayed at a friend's house while in Houston, but she was unable to recall
the friend's name. Lieutenant Holland testified that appellant became increasingly
nervous as he questioned her; her arms and legs shook noticeably, she avoided eye
contact with Lieutenant Holland, and her voice trembled. 

 After patting appellant down with her consent, Lieutenant Holland returned to
the van and began to question Demetrious Pegues, who was traveling with appellant. 
Upon opening the passenger side door to the van, Lieutenant Holland detected a
strong odor of marijuana "which just about knocked me over." Like appellant,
Pegues appeared extremely nervous and did not have his driver's license. Pegues
stated that he and appellant had been in Houston visiting friends for only a couple of
hours. Lieutenant Holland returned to the rear of the van to resume questioning
appellant. In response to Lieutenant Holland's questions, appellant initially denied
smoking marijuana, then shortly thereafter admitted that she had smoked marijuana,
although she continued to deny using marijuana that day. Appellant also stated that
she had been in Houston for one day, as she had initially indicated prior to asserting
that she had been in Houston for three days. Appellant granted Lieutenant Holland
consent to search the van. He then handcuffed appellant, who voluntarily stated, "I
didn't do it." 

 Lieutenant Holland returned to the front of the van, where Pegues admitted that
he had been smoking marijuana moments before Lieutenant Holland had pulled the
van over. Pegues also consented to a search of the van and was placed in handcuffs
by Lieutenant Holland. Lieutenant Holland called for backup while he attempted to
calm appellant's two children, ages eight and one, who were inside the van. Shortly
thereafter, DPS Officer J. Crone arrived, and the children were placed in Lieutenant
Holland's patrol car under Officer Crone's supervision. Lieutenant Holland then
searched the van, where he discovered a partially opened duffel bag toward the rear
of the vehicle. After approximately four kilos of cocaine, wrapped in duct tape and
covered with grease, were discovered inside the duffel bag, Lieutenant Holland
arrested Pegues and appellant. 

 Following their arrests, Pegues and appellant were separately questioned by
Lieutenant Holland within recording range of the audio equipment in Officer Crone's
car. Pegues reiterated the fact that he had been smoking marijuana before Lieutenant
Holland had stopped the van, and he stated that he and appellant had come to
Houston from Alabama to visit a friend for the day. Pegues stated that the cocaine
did not belong either to appellant or to him, but he denied knowing to whom it did
belong. Appellant stated that she and Pegues had come to Houston the previous night
and had stayed with a friend of Pegues. Appellant and Pegues were then placed in
Officer Crone's patrol car, where audio equipment recorded fragments of a
conversation between appellant and Pegues. These fragments included Pegues telling
appellant, "You didn't know anything about it," and appellant apologizing to Pegues. 
Because of ambient noise, the context in which these statements were made was not
discernible from the audiotape. 

 Pegues and appellant were transported to a DPS office, where they were
interviewed separately. Lieutenant Holland testified that appellant told him she had
driven with Pegues to Baytown or Houston and picked up some packages. She then
gave a written statement which read in full, "I came to Houston 7/28 from Alabama. 
We rode around, went to McDonald's, left Houston. Daughter was upset and fussy. 
When trying to console her, I noticed the police lights. I pulled over. [Lieutenant
Holland] said I was swerving." 

 Pegues indicated that he would be willing to cooperate with authorities in
setting up a sting operation to arrest his alleged drug supplier. DPS Narcotics Officer
K. Parks was called in to work with Pegues on effectuating the sting operation. 
Pegues agreed to call his drug supplier, whom he identified only as "Greg," to inform
him that the van had broken down and to request assistance. In three conversations
between Pegues and Greg, recorded by Officer Parks, Greg seemed indifferent to
Pegues's situation and never referred to contraband of any type. With the attempted
sting operation at a dead end, Pegues and appellant were transported to the Chambers
County Correctional Facility (CCCF). Prior to being transferred to CCCF, Pegues
volunteered a written statement indicating that (1) he was contacted by Greg to
transport four kilograms of cocaine from Houston to Montgomery, Alabama; (2) he
traveled with appellant and her two children to Houston, arriving on July 29, 2002;
(3) he and appellant checked into a hotel room; (4) at 4:00 p.m. he met Greg at a
McDonald's, where Greg transferred four kilograms of cocaine to him; and (5) he and
appellant returned to the hotel room and rested until 7:00 p.m., when they left to
return to Alabama. 

 At trial, appellant testified that she had been dating Pegues for approximately
one year and had traveled with him to Houston solely for the purpose of taking an
out-of-town trip. Appellant denied knowing that Pegues intended to retrieve drugs
to transport back to Alabama. She testified that she and Pegues did visit a
McDonald's restaurant, where Pegues said the drug transaction took place; but stated
that she did not observe Pegues picking up any packages. Appellant stated that she
argued with Pegues after checking into a motel and asked to return to Alabama. She
was unable to recall the name of the motel. Appellant also insisted that she did not
tell Lieutenant Holland she had been in Houston for three days. However, appellant
did concede that she had lied to Lieutenant Holland about visiting family and friends
in Houston after hearing Pegues make a similar statement. Appellant admitted she
was trying to corroborate Pegues's story, but insisted she did so only because of her
romantic feelings for Pegues. The trial court found appellant guilty and sentenced her
to prison. This appeal followed. 

DISCUSSION

 In four points of error, appellant contends that (1) the evidence was legally and
factually insufficient to sustain her conviction and (2) the trial court abused its
discretion by denying appellant's request to set aside the finding of guilt due to the
State's failure to disclose exculpatory evidence. 


 Legal Sufficiency

 In her first and third points of error, appellant argues that the evidence was
legally insufficient to sustain her conviction under the indictment. Specifically,
appellant contends that the evidence was legally insufficient to show that she
possessed the cocaine or was guilty under the law of parties, as alleged in the
indictment. 

 We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational fact finder could
have found the essential elements of the crime beyond a reasonable doubt. Wesbrook
v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000); King v. State, 29 S.W.3d 556,
562 (Tex. Crim. App. 2000). Although our analysis considers all evidence presented
at trial, we may not re-weigh the evidence and substitute our judgment for that of the
fact finder. King, 29 S.W.3d at 562.

 Appellant was charged as a principal and under the law of parties with
possession of a controlled substance with intent to deliver. According to the
indictment, appellant

 intentionally and knowingly possess[ed], with intent to deliver, a
controlled substance, namely, Cocaine, in an amount of four hundred
grams or more . . . .

 





 And . . . that on or about the 29th day of July, A.D. 2002, in Chambers
County, Texas, and anterior to the presentment of this indictment,
another person or persons did then and there intentionally and
knowingly possess, with intent to deliver, a controlled substance,
namely, Cocaine, in an amount of four hundred grams or more . . . and
the defendant Toni Nikel Good, with the intent to promote or assist the
commission of said offense, did solicit, encourage, direct, aid, or attempt
to aid said person or persons to commit said offense. 


 To prove the offense of possession of a controlled substance as a principal
actor, the State must show that the accused (1) exercised actual care, custody, control,
or management of the controlled substance and (2) was conscious of his connection
with it and knew what it was. See Tex. Health & Safety Code Ann. § 481.002(38)
(Vernon Supp. 2005), § 481.112(a) (Vernon 2003); Brown v. State, 911 S.W.2d 744,
747 (Tex. Crim. App. 1995). To convict under the law of parties, the State must show
that the defendant acted with the intent to promote or assist the offense by soliciting,
encouraging, directing, aiding, or attempting to aid the other person in the
commission of the offense. Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 2003). Thus,
to prove possession of a controlled substance as a party, the State must show (1) that
another person possessed the contraband and (2) that the defendant, with the intent
that the offense be committed, solicited, encouraged, directed, aided, or attempted to
aid the other's possession. Woods v. State, 998 S.W.2d 633, 636 (Tex.
App.--Houston [1st Dist.] 1999, pet. ref'd). Mere presence in the vicinity of a
controlled substance or in a place where contraband is being used or possessed by
others does not, by itself, support a finding that a person is a party to an offense. 
Roberson v. State, 80 S.W.3d 730, 735 (Tex. App.--Houston [1st Dist.] 2002, pet
ref'd). Knowledge of the presence of cocaine is a required element for conviction 
either as a principal or as a party to the offense. See Tex. Health & Safety Code
Ann. § 481.115(a) (Vernon 2003).

 We first address whether the evidence was legally sufficient to convict
appellant of possession as a principal. The State need not prove exclusive possession
of the contraband for conviction as a principal. Roberson, 80 S.W.3d at 735 (citing
Harvey v. State, 487 S.W.2d 75, 77 (Tex. Crim. App. 1972)). Rather, control over
contraband may be jointly exercised by more than one person. McGoldrick v. State,
682 S.W.2d 573, 578 (Tex. Crim. App. 1985). However, when the accused, like
appellant, is not in exclusive possession of the place where the contraband is found,
we cannot conclude that the accused had knowledge of and control over the
contraband unless the State establishes an "affirmative link" between the accused and
the contraband--i.e., independent facts and circumstances which affirmatively link
the accused to the contraband so as to suggest that the accused had knowledge of the
contraband and exercised control over it. Rhyne v. State, 620 S.W.2d 599, 601 (Tex.
Crim. App. 1981); Roberson, 80 S.W.3d at 735. In other words, the State must
establish that the accused's connection with the substance was more than just
fortuitous. Brown, 911 S.W.2d at 747. An affirmative link may be established
through either direct or circumstantial evidence. Id. Even when several linking
factors have been identified, the number actually supported by the evidence is not as
important as the "logical force" they collectively create to prove that a crime has been
committed. Roberson, 80 S.W.3d at 735 (quoting Whitworth v. State, 808 S.W.2d
566, 569 (Tex. App.--Austin 1991, pet. ref'd)).

 The Court of Criminal Appeals has identified several factors that may help to
establish an affirmative link to the contraband, including whether (1) the contraband
was in plain view; (2) the contraband was conveniently accessible to the accused; (3)
the accused was the owner of the place where the contraband was found; (4) the
accused was the driver of the automobile in which the contraband was found; (5) the
contraband was found on the same side of the car as where the accused was sitting;
(6) the place where the contraband was found was enclosed; (7) the odor of the drug
found was present in the vehicle; (8) paraphernalia to use the contraband was found
in view of or on the accused; (9) conduct by the accused indicated a consciousness
of guilt; (10) the accused had a special connection to the contraband; (11) occupants
of the vehicle gave conflicting statements about relevant matters; (12) the physical
condition of the accused indicated recent consumption of the contraband found in the
vehicle; and (14) affirmative statements by the accused connect the accused to the
contraband. Gilbert v. State, 874 S.W.2d 290, 298 (Tex. App.--Houston [1st Dist.]
1994, pet. ref'd). Courts have also considered (15) whether traces of the contraband
or a large sum of money were found on the accused, (16) the amount of contraband
found, and (17) whether the accused attempted to flee. See Whitworth, 808 S.W.2d
at 569; Roberson, 80 S.W.3d at 740, 742; Chavez v. State, 769 S.W.2d 284, 288-89
(Tex. App.--Houston [1st Dist.] 1989, pet. ref'd).

 Here, the logical force of the affirmative links is legally sufficient to establish
that appellant (1) exercised actual care, custody, control, or management of the
controlled substance and (2) was conscious of her connection with it and knew what
it was. See Tex. Health & Safety Code Ann. § 481.002(38) (1), § 481.112(a). 
According to the record before us: 


 The cocaine, located in a partially open duffel bag in an open
space inside the van, was conveniently accessible to appellant. 
See Gilbert, 874 S.W.3d at 298. 

 Appellant was the driver of the van in which Lieutenant Holland
found the cocaine. Being the driver of a vehicle in which
contraband is found is considered an affirmative link to the
contraband. See, e.g., Powell v. State, 112 S.W.3d 642, 645-46
(Tex. App.--Houston [1st Dist.] 2003, pet. ref'd). 


 


 The cocaine was found in an enclosed space, namely, the van
itself. Recovery of contraband within an enclosed space,
including a vehicle, affirmatively links appellant to the cocaine. 
See Robinson, 174 S.W.3d 320, 327 (Tex. App.--Houston [1st
Dist.] 2005, pet. ref'd).


 






 Appellant's conduct indicated her consciousness of guilt,
including her extreme nervousness, avoidance of eye contact,
shaking arms and legs, trembling voice, and statement to
Lieutenant Holland that "I didn't do it." See Gilbert, 874 S.W.3d
at 298. 


 


 Appellant and Pegues gave conflicting statements about relevant
matters, namely, why they had traveled to Houston and how long
they had stayed there. Conflicting statements about relevant
matters are considered affirmative links to contraband. See
Roberson, 80 S.W.3d at 737-38. Here, appellant initially
indicated that she was in Houston for one day. She later stated
she had been in Houston for three days, before again claiming she
had been in Houston for only one day. Also, appellant stated she
was in Houston to visit family. Pegues, however, stated that he
and appellant had come to Houston to visit friends. Appellant
later changed her story in an attempt to corroborate Pegues's
statement. 

 A large amount of cocaine, approximately four kilograms, was
recovered from the van. The amount of contraband recovered is
a well established factor in affirmatively linking a defendant to
the contraband. See Roberson, 80 S.W.3d at 740. In Robinson v.
State, the defendant was a passenger in a vehicle from which two
kilograms of cocaine were recovered. 174 S.W.3d at 323-24. 
This court determined that two kilograms of cocaine were
strongly indicative of an affirmative link between the defendant
and the cocaine. See id. at 328-29. Here, appellant was the
driver of the vehicle and four kilograms of cocaine were
recovered. 


 

 We conclude that the logical force of the evidence is legally sufficient for a
rational fact finder to have affirmatively linked appellant to the contraband and to
have found that appellant exercised care, custody, control, or management over the
contraband while being conscious of her connection to it. See Roberson, 80 S.W.3d
at 736-42.

 Appellant also contends that the evidence was legally insufficient to sustain her
conviction as a party to the offense. We note that appellant's judgment and sentence
make no reference to her being found guilty as a party. Instead, the judgment and
sentence directly state that she was convicted of "unlawful possession with intent to
deliver a controlled substance." Because the evidence is legally sufficient to sustain
appellant's conviction as a principal, we need not address her contentions regarding
the legal sufficiency of the evidence to convict her as a party. See Tex. R. App. P.
47.1.

 Nevertheless, we note that several affirmative links tie appellant to the cocaine. 
Such links tend to show that appellant possessed knowledge of the presence of the
cocaine, a required element for conviction as a party to the offense of possession. See
Tex. Health & Safety Code Ann. § 481.115(a). Second, legally sufficient
evidence exists to support the finding that appellant attempted to aid another
person's, namely Pegues's, possession of the cocaine. See Tex. Pen. Code. Ann. §
7.02(a)(2). Specifically, appellant admitted at trial that she lied in an attempt to
corroborate Pegues's explanation for why the two had been in Houston. Viewing the
evidence in the light most favorable to the verdict, this admission, coupled with the
other evidence revealing inconsistencies and contradictions in appellant's statements,
provides legally sufficient evidence to support a showing that appellant assisted
Pegues in his possession of the cocaine. 

 We overrule appellant's first and third points of error. 

 Factual Sufficiency

 In her second point of error, appellant argues that the evidence was factually
insufficient to sustain her conviction due to a lack of affirmative links between
appellant and the cocaine found in the van. 

 We begin the factual sufficiency review with the presumption that the evidence
supporting the verdict is legally sufficient. Clewis v. State, 922 S.W.2d 126, 134
(Tex. Crim. App. 1996). We view all the evidence in a neutral light, and we will set
aside the verdict only if the contrary evidence is so strong that the verdict is clearly
wrong and manifestly unjust or the evidence is so weak that the standard of proof
beyond a reasonable doubt could not have been met. Escamilla v. State, 143 S.W.3d
814, 817 (Tex. Crim. App. 2004) (citing Zuniga v. State, 144 S.W.3d 477, 483 (Tex.
Crim. App. 2004)). Our evaluation may not intrude upon the fact finder's role as the
sole judge of the weight and credibility accorded any witnesses's testimony. Cain v.
State, 958 S.W.2d 404, 407 n.4 (Tex. Crim. App. 1997). The trier of fact solely
decides what weight is to be given to contradictory testimony as it turns on an
evaluation of credibility and demeanor. See id. at 408-09. The fact finder is free to
believe any or all of the testimony of the State's witnesses. Hughes v. State, 897
S.W.2d 285, 289 (Tex. Crim. App. 1994). The trier of fact's decision, therefore, is
not manifestly unjust merely because he resolved conflicting views of evidence in
favor of the State. Cain, 958 S.W.2d at 410. We must defer appropriately to the fact
finder to avoid substituting our judgment for its judgment. Zuniga, 144 S.W.3d at
481-82. For a review of factual sufficiency, we must consider the most important
evidence that appellant claims undermines the verdict. Sims v. State, 99 S.W.3d 600,
603 (Tex. Crim. App. 2003). 

 Appellant contends that the evidence is factually insufficient for two reasons. 
First, she argues that she was not affirmatively linked to the cocaine because a
number of the affirmative links enumerated by Texas courts do not apply in her case. 
For instance, appellant correctly notes that she did not attempt to flee, was not found
with drug paraphernalia or under the influence of drugs, and did not possess a large
sum of money. A court should not focus on the absence of affirmative links,
however, but should consider the logical force of the links that are present. Edwards
v. State, 178 S.W.3d 139, 144 (Tex. App.--Houston [1st Dist.] 2005, no pet.). The
probative value is not in the number of factors met, but in the "logical force" of the
totality of the factors, (2) which may be established through either direct or
circumstantial evidence. Brown, 911 S.W.2d at 747. Here, the logical force of the
evidence, viewed in a neutral light, is not so weak as to render the verdict manifestly
unjust. In particular, we note that appellant's defense almost exclusively consisted
of her assertion that she did not know drugs were being transported in the van. As
noted above, the logical force of appellant's affirmative links to the cocaine
undermines her assertion of innocence. We will not disturb the trier of fact's
determination regarding witness credibility because the trier of fact is in the best
position to judge the credibility of the witness. State v. Ballard, 987 S.W.2d 889, 891
(Tex. Crim. App. 1999); Allen v. State, 39 S.W.3d 428, 431 (Tex. App.--Houston
[1st Dist.] 2001, no pet.).

 Second, appellant argues that the evidence against her was factually
insufficient in view of Pegues's actions and statements. The record reflects that
Pegues volunteered a statement in which he admitted to picking up the cocaine in
Houston. In addition, a recording made while Pegues and appellant were sitting in
Officer Crone's patrol car seems to contain a statement by Pegues that may be
construed as indicating that appellant did not know about the cocaine, although the
statement, "you didn't know anything about it," is followed by appellant's apology.
The recording, however, is difficult to understand, and it is unclear in what context
Pegues made the statement suggesting that appellant lacked knowledge of the drugs. 
In view of the entire record, the partially decipherable audiotape and Pegues's
admission that he arranged to pick up the cocaine do not combine to outweigh the
logical force of the evidence to such an extent that the trial court's verdict was
manifestly unjust. This is particularly true when one considers the well-established
principle that control over contraband may be exercised by more than one person. 
See McGoldrick, 682 S.W.2d at 578. Thus, even the assumption that Pegues was
more culpable than appellant will not lead to the conclusion that the evidence is not
factually sufficient to sustain appellant's conviction. 

 We overrule appellant's second point of error. 

 Exculpatory Evidence

 In her fourth point of error, appellant contends that the trial court abused its
discretion by denying her request to set aside the finding of guilt due to the State's
failure to disclose exculpatory evidence. Appellant's request was made prior to the
commencement of the punishment phase of her trial. 

 Appellant complains that the State suppressed a report prepared by Officer
Parks summarizing his interaction with Pegues during the attempt to set up a sting
operation to arrest Pegues's alleged drug supplier. Officer Parks's report summarizes
the circumstances behind Pegues's arrest and describes the unsuccessful attempts to
lure Pegues's alleged supplier into a controlled buy. The report notes that Officer
Parks grew suspicious of Pegues and came to the conclusion that Pegues himself was
the likely owner of the drugs confiscated from the van. The report refers to appellant
only briefly, noting that Pegues asked appellant to travel to Houston with him to
minimize the risk of being stopped by the police while transporting the cocaine back
to Alabama. The report makes no reference to Pegues's statement that appellant had
no knowledge of the cocaine, nor does it contain any statement from Officer Parks
indicating that he believed appellant lacked complicity in the offense. 

 The Due Process Clause of the Fourteenth Amendment requires the State to
disclose evidence that is favorable to a criminal defendant. Brady v. Maryland, 373
U.S. 83, 86-88, 83 S. Ct. 1194, 1196-97 (1963); Thomas v. State, 841 S.W.2d 399,
404 (Tex. Crim. App. 1992). In Brady, the United States Supreme Court concluded
that suppression by the prosecution of evidence favorable to a defendant violates that
defendant's due process rights if the evidence is material either to guilt or
punishment. Brady, 373 U.S. at 87, 83 S. Ct. at 1196-97; see also Wyatt v. State, 23
S.W.3d 18, 27 (Tex. Crim. App. 2000). In order to establish a due process violation
under Brady, an appellant must satisfy each element of a three-pronged test. Thomas,
841 S.W.2d at 402-03 (citing Moore v. Illinois, 408 U.S. 786, 92 S. Ct. 2562 (1972)). 
Specifically, appellant must show that: (1) the State suppressed evidence; (2) the
suppressed evidence was favorable to appellant; and (3) the suppressed evidence was
material. Little v. State, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999); Thomas, 841
S.W.2d at 402-03 (citing Moore v. Illinois, 408 U.S. 786, 92 S. Ct. 2562 (1972)).

 Here, appellant fails to show a due process violation under Brady because she
has not demonstrated that the allegedly suppressed evidence--Officer Parks's
report--is material. (3) For the evidence to be considered material under Brady,
appellant must show that she was prejudiced by the State's alleged failure to disclose
Officer Parks's report. See Harm v. State, 183 S.W.3d 403, 406 (Tex. Crim. App.
2006). Demonstrating prejudice requires appellant to show that there is a reasonable
probability that, had the report been disclosed to the defense earlier, the result of the
proceeding would have been different. Little, 991 S.W.2d at 866. A reasonable
probability is one that is sufficient to undermine confidence in the outcome of the
trial. Wyatt, 29 S.W.3d at 27. The mere possibility that the allegedly undisclosed
report could have helped appellant or affected the trial's outcome does not establish
"materiality" in the constitutional sense. Hampton v. State, 86 S.W.3d 603, 612 (Tex.
Crim. App. 2002). 

 As noted, Officer Parks's report contains no information tending to show that
appellant did not exercise care, custody, control, or management over the cocaine
with a conscious awareness of her connection to it. The report does state Officer
Parks's conclusion that Pegues owned the cocaine, but this lends little support to
appellant because one can be convicted of possessing drugs either as a principal or
as a party without actually owning the drugs in question. See McGoldrick, 682
S.W.2d at 578. The statute does not require ownership; it requires only care, custody,
control, or management; (4) and control over contraband may be jointly exercised by
more than one person. See id. Thus, although Officer Parks's report certainly
implicates Pegues, it does little to exonerate appellant. In short, the evidence in the
report was not sufficient to undermine confidence in the verdict. Little, 991 S.W.2d
at 866. 

 We overrule appellant's fourth point of error. (5) 


CONCLUSION 

 We affirm the judgment of the trial court. 



 

 

 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes, and Hanks. 


Do not publish. Tex. R. App. P. 47.2(b).
1. "'Possession' means actual care, custody, control, or management." Tex. Health &
Safety Code Ann. § 481.002(38) (Vernon Supp. 2005).
2. Edwards v. State, 178 S.W.3d 139, 144 (Tex. App.--Houston [1st Dist.] 2005, no pet.). 
3. The State contends that the report was placed in a file open to appellant and thus argues that
the evidence was not suppressed. Conversely, appellant claims that the report did not appear
in an open file as claimed by the State. Because we hold that the allegedly suppressed
evidence is not material, it is not necessary to consider whether the report was available to
appellant. 
4. See Tex. Health & Safety Code Ann. § 481.002(38) (Vernon Supp. 2005).
5. In an effort to bolster its position that it did not attempt to suppress Officer Parks's report,
the State filed a motion to supplement the record with materials indicating that Officer Parks
was subpoenaed to testify at appellant's trial Appellant opposed the State's motion. Because
we conclude that the contested evidence was not material, we deny the motion as moot.