**John D. McGOLDRICK, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 67341.**

Court of Criminal Appeals of Texas, En Banc.

Jan. 9, 1985.

574

Frank Robin, Jr., The Woodlands, for appellant.

James H. Keeshan, Dist. Atty. and Mary Ann Parish, Asst. Dist. Atty., Conroe, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction as a party for the possession of more than four ounces of marihuana. Punishment was assessed by the jury at five years' imprisonment and a fine of $5,000.00.

On appeal a number of grounds of error are presented. Appellant, inter alia, contends the trial court erred in admitting, over objection, the hearsay statements of Gary Johnson to undercover officers, on the theory that they were declarations of a co-conspirator made in the furtherance of a conspiracy, when no conspiracy was ever proven; that the court erred in admitting, over objection, items seized as a result of

an illegal search and "inventory" of his automobile; that the court erred in overruling objections to a number of improper jury arguments by the prosecutor, and that the evidence was insufficient to sustain the conviction. We agree the evidence is insufficient and reverse the conviction.

Appellant was jointly indicted in the second count of the indictment with Leland Marrow and Gary Johnson as "acting together" in possessing more than four ounces of marihuana.

On May 18, 1979, deputies Don Pollock and Mark Bousquet of the Montgomery County Sheriff's office were working as undercover narcotic officers. Bousquet set up a meeting between Gary Johnson and Pollock, who was posing as a prospective buyer.

Bousquet and Pollock went separately at 12 noon to the meeting place—Kroger store's parking lot in Conroe. Johnson arrived later in a brown Chevrolet Malibu driven by a young woman. Pollock and Johnson discussed the delivery of marihuana. Gary Johnson talked about selling 100 pounds of marihuana at $300.00 per pound. Pollock showed Johnson $30,000.00 in cash in a bag, which he had temporarily borrowed from the Federal Drug Enforcement Administration. Johnson finally said his "people" only had 63 pounds at the time but were preparing for 42 tons of marihuana. Pollock tape recorded the conversation.[1]

Subsequently that afternoon Pollock had several telephone conversations with Gary Johnson as to the amount of marihuana to be delivered. They agreed on 78 pounds. The parties decided to meet again at the Kroger's parking lot at 6 p.m. with Gary Johnson to take Bousquet's vehicle to obtain the marihuana.

Surveillance was set up including a helicopter, a van from which pictures could be taken, and a number of police vehicles. Gary Johnson arrived at 6:15 p.m. in the brown Malibu. Pollock gave Johnson the

paper sack in which he previously had the money. This time, however, it contained cut up pieces of a phone book covered by $10.00 bills. Gary Johnson did not look in the sack, but placed it in the trunk of the Malibu. Gary Johnson then took Bousquet's green Dodge Dart automobile to obtain the marihuana. He was followed by several police vehicles and by the helicopter.

Deputy sheriff Donald Johnson[2] was a passenger in the helicopter. He observed the green Dodge go North on Hwy. # 45, exit onto Fm. Rd. 830 and turn left onto a road and travel for four or five miles before stopping by a trailer house near a lake. Two individuals were outside the house. The driver and the other two went into the house for three or four minutes. One individual then went to a shed and brought back a small package, "some kind of package. I couldn't tell what it was ...." and put it in the trunk of the Dodge. Deputy Johnson from the helicopter then observed that individual (apparently Gary Johnson) get in the driver's seat of the Dodge and another individual also get in the Dodge. The third individual (later shown to be the appellant) got into a light beige car and followed the green Dodge as it left the trailer house. The cars were kept under surveillance by the helicopter and police motor vehicles as they proceeded into Conroe. It was determined the beige car was a Lincoln Continental with license plate number TQE 810. The vehicles did not proceed to the Kroger's parking lot, but went to North Hills Shopping Center and stopped. The passenger in the green Dodge got out and entered a white Ford already parked on the lot. The green Dodge and white Ford were then driven across the street to a Gibson's parking lot. The beige car turned south onto Frazier Street and left the area. Surveillance of that car was lost.

Deputy Johnson was able to observe from the helicopter that the Dodge and Ford parked along side each other in the

---

1. The tape recording was introduced over objection.

2. This witness is not to be confused with Gary Johnson, a co-defendant.

Gibson's parking lot, and the individuals removed packages from the trunk of the white Ford and place the same in the trunk of the green Dodge. Both trunks were closed and both individuals got in the Ford and drove toward Kroger's.

Deputy Pollock, who had been kept informed of developments by police radio, saw Gary Johnson walk around the building at Kroger's where he was sitting in his car. Gary Johnson told him the Dodge was on another parking lot and they would have to go there to get the marihuana. Gary Johnson rode with Deputy Bousquet in Johnson's brown Malibu and Pollock drove his own vehicle to the Gibson's parking lot. Bousquet opened the trunk of the Dodge and examined the contents. He then gave a prearranged signal and Pollock from his vehicle ordered "the arrest." As police officers converged on Gary Johnson and Bousquet, Pollock drove off. Bousquet was arrested to prevent blowing his cover. The marihuana was seized.[3]

Two or three minutes later the white Ford was stopped near the Gibson's parking lot and its driver was arrested. He was Leland Morrow.

Approximately 15 to 20 minutes later, the beige Lincoln Continental was stopped on Frazier Street and the driver, the appellant, was arrested. After appellant was outside the car, apparently at the rear, being handcuffed, Patrolman Hightower entered the Continental and found a blue pouch. He unzipped it and found an unloaded pistol. No ammunition was shown to have been found. The Continental was impounded and later searched or inventoried. Deputy Pollock found in the trunk a copy of the Nacogdoches Daily Sentinal, dated May 11, 1979, some duct tape, and some white garbage bags, and a wallet with the identification of Alvin W. Nelson

of Madisonville. No marihuana was found in the car.[4] Evidence was offered to show the Continental was leased by Nac Tex Service in Nacogdoches.

A search of appellant's person revealed some business cards and receipts. A $72.00 receipt was signed "J.D. McGoldrick by Leland," a receipt on the back of which was written three telephone numbers of Gary Johnson, an Old Mill Inn card on back of which were some calculations and figures [5] were introduced into evidence.

The chain of custody was established and the chemist testified the substance submitted to him was marihuana weighing 71 pounds. Pollock related the marihuana when first found in the Dodge had with pages of the Nacogdoches Daily Sentinal of May 11, 1979, some white garbage bags and some duct tape on some of the packages. He felt these had been misplaced when sent to the chemist. The chemist testified the exhibits as offered were in the same condition as received by him.

Appellant testified he had known Morrow for 12 years and at one time Morrow had run a club for him in Nacogdoches, and that Morrow was a partner with him in a trailer company in Nacogdoches, Nac-Tex Service. That company leased a Chevrolet truck and Lincoln Continental, and that several people had access to the car from time to time.

On the day in question appellant, who lived in Bryan, had been in Groveton and Huntsville, decided to go to Conroe to see about collecting a year old debt of $100 owed him by Tommy Hansen, a son of a long-time friend. The father, Alfred Hansen, had told him his (Hansen's) son could be contacted through Gary Johnson, and instructed him how to get to Johnson's

---

**3.** Pollock, from his position in another vehicle, described the trunk as containing boxes, bundles and packages. He later described the marihuana at the police station as being in "bales," bundles and packages. It was estimated at 78 pounds.

**4.** Evidence was offered to show that the white Ford involved was leased to Nelson. There was

also evidence that Nelson never claimed the wallet as his.

**5.** Pollock testified the card had "calculations and figures TLW 78 multiplied by 3 and then there is some subtractions out from underneath. The total would be 23,400 less 1950 for 21450 less 1750 for a total at the bottom of the card of 19,700."

trailer house. He had also given appellant Johnson's telephone numbers.

Appellant drove to the trailer house and encountered Morrow, who said he was in Conroe to visit his children. Johnson, he said, arrived shortly thereafter. When he inquired about Tommy Hansen, Johnson told him Hansen might be at the Moon Palace and to follow him into Conroe and he would show the appellant where the place was.

Appellant related he followed the green Dodge to the North Hills Shopping Center where either Johnson or Morrow directed him how to reach the Moon Palace. He then left and drove to the Moon Palace. He was unable to find Hansen there. He departed for Bryan. Being unfamiliar with Conroe, he drove in the wrong direction. When he realized his mistake and changed directions, he was arrested.

Appellant denied any knowledge of or involvement with the drug transaction.[6]

Alfred Hansen testified appellant told him about his son's debt and he told appellant his son was probably in Conroe and could be contacted through Gary Johnson. He gave appellant Johnson's telephone number and directions to the trailer house.

The court submitted only the second count of the indictment, and authorized conviction under the law of parties.[7] See V.T.C.A., Penal Code, § 7.01 and 7.02. The jury found the appellant guilty.

In reviewing the sufficiency of the evidence to sustain the conviction, we ob- serve this Court has held that the standard for such review on appeal is the same for both direct and circumstantial evidence cases. *Wilson v. State,* 654 S.W.2d 465 (Tex.Cr.App.1983) (opinion on rehearing); *Denby v. State,* 654 S.W.2d 457 (Tex.Cr. App.1983) (opinion on rehearing); *Freeman v. State,* 654 S.W.2d 450 (Tex.Cr.App.1983) (opinion on rehearing); *Carlsen v. State,* 654 S.W.2d 444 (Tex.Cr.App.1983). Further, the relevant standard is the one developed by the United States Supreme Court in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), to wit "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

In *Jackson v. State,* 672 S.W.2d 801, 803 (Tex.Cr.App.1984), this Court wrote, after noting the above discussed standard:

"In applying the above standard of review, the court agreed that the 'exclusion of outstanding reasonable hypotheses' test would still be utilized. The opinion on rehearing in Denby noted that, 'if the evidence supports an inference other than the guilt of the appellant, a finding of guilt beyond a reasonable doubt is not a rational finding' 654 S.W.2d at 456. Similarly, the Denby concurrence stressed that, 'Logic dictates that if there is a "reasonable hypotheses" other than the guilt of the accused, then it cannot be said that the guilt has been shown "beyond a reasonable

---

**6.** He explained the pistol had been left with him by a friend who could not carry it with him on a commercial airlines flight. He had not been able to return the unloaded pistol when he expected to and had forgotten it was in the car.

**7.** In applying the law to the facts, the court instructed the jury:

"Now if you find from the evidence beyond a reasonable doubt that on or about the 18th day of May, 1979, in Montgomery County, Texas, Leland Morrow or Gary E. Johnson, did then and there knowingly and intentionally possess a usable quantity of marihuana of more than four ounces, and if you further find from the evidence beyond a reasonable doubt that the defendant, John D. McGol-

drick, Jr., knew of the intent of Leland Morrow or Gary E. Johnson, if any there was, to possess a usable quantity of marihuana of more than four ounces, and that he, John D. McGoldrick, Jr., acted with intent to promote or assist the commission of the offense by Leland Morrow or Gary E. Johnson by encouraging, directing, aiding or attempting to aid, Leland Morrow or Gary E. Johnson to commit the offense, if any, then you will find the defendant guilty of possession of a usable quantity of marihuana of more than four ounces."

The court also charged that mere presence alone is not sufficient to convict, and on the law of circumstantial evidence.

doubt." ' 654 S.W.2d at 457. In *Wilson, Denby, Freeman* and *Carlsen,* this Court also firmly rejected the notion of a presumption on appeal of an accused's innocence in circumstantial evidence cases."

■ Turning to other phases of the applicable law in this circumstantial evidence case, we observe that "possession" means more than being where the action is; it involves the exercise of dominion and control over the thing actually possessed. *Brown v. State,* 481 P.2d 475 (Okla.Cr.App. 1971); *Shortnacy v. State,* 474 S.W.2d 713, 716 (Tex.Cr.App.1972). See also *Hausman v. State,* 480 S.W.2d 721, 723 (Tex.Cr.App. 1972).

■ It is well settled though that an accused may with another or others jointly possess dangerous drugs or narcotics and that such possession need not be exclusive. *Waldon v. State,* 579 S.W.2d 499 (Tex.Cr. App.1979); *Reyes v. State,* 575 S.W.2d 38, 39 (Tex.Cr.App.1979); *Martinez v. State,* 539 S.W.2d 885 (Tex.Cr.App.1976); *Woods v. State,* 533 S.W.2d 16 (Tex.Cr.App.1976); *Curtis v. State,* 519 S.W.2d 883 (Tex.Cr. App.1975). Thus facts and circumstances may be sufficient to show an accused and others acted together in possessing a narcotic drug, but there must be some affirmative link existing between the person accused and the narcotic drug. *Hausman v. State,* supra, and cases there cited. Further, mere presence alone at a place where narcotics or dangerous drugs are being used or possessed by others does not justify a finding of joint possession; *Waldon v. State,* supra; *Reyes v. State,* supra; *Underwood v. State,* 571 S.W.2d 7 (Tex.Cr. App.1978); *Ayers v. State,* 570 S.W.2d 926 (Tex.Cr.App.1978); *Harrison v. State,* 555 S.W.2d 736 (Tex.Cr.App.1977), or constitute one a party to an offense. *Shortnacy v. State,* 474 S.W.2d 713, 716 (Tex.Cr.App. 1972); *Ware v. State,* 467 S.W.2d 256 (Tex. Cr.App.1971).

■ In *Wilkes v. State,* 572 S.W.2d 538 (Tex.Cr.App.1978), the crux of the rule was summarized:

"It has been consistently held in this State that possession means more than just being where the action is: the State must prove two elements: (1) that the accused exercised care, control, and management over the contraband, and (2) that the accused knew the matter possessed was contraband. * * * Therefore, there must be additional independent facts and circumstances which affirmatively link the accused to the contraband in such a manner that it can be concluded he had knowledge of the contraband as well as control over it ...." See also *Rice v. State,* 548 S.W.2d 725 (Tex.Cr.App.1977).

We have held that both of these elements may be proved circumstantially:

"[C]ontrol may be shown by actual or constructive possession, and knowledge being subjective, must always be inferred to some extent, in the absence of an admission by the accused. An affirmative link to the person accused with the possession of narcotics may be established by showing independent facts and circumstances which indicate the accused's knowledge and control of the narcotics." *Rodriquez v. State,* 496 S.W.2d 46 (Tex.Cr.App.1973).

In *Sewell v. State,* 578 S.W.2d 131 (Tex. Cr.App.1979), a panel of this Court held (1) the independent facts and circumstances shown by the testimony did not exclude every reasonable hypothesis other than that the defendant knew of and exercised control over the marihuana and (2) the evidence was insufficient to show that the defendant was a party to the possession of marihuana, where the evidence showed that the defendant was a passenger in a car driven by co-defendant for a prolonged period of time before the commission of the alleged offense of possession of marihuana, but there was no evidence of any aiding in the carrying out of the offense in any way other than riding in the car.

In *Sewell,* this Court wrote:

"This Court has carefully reviewed the 'affirmative link' in numerous cases. We have held that even when the defendant

is present at the scene, there must be additional facts to show knowledge and control. *Underwood v. State*, 571 S.W.2d 7 (Tex.Cr.App.1978); *Harrison v. State*, supra. For example, in *Hausman v. State*, 480 S.W.2d 721 (Tex.Cr.App. 1972) we concluded that even though officers had observed persons smoking around a campfire and appellant was found sleeping by the fire with a bag of marihuana one foot from his head, the evidence was insufficient to show exercise of control over the substance. In the recent case of *Nieves v. State*, 575 S.W.2d 38 (Tex.Cr.App.1979), we concluded that the evidence was insufficient to find knowledge of the contraband when the defendant was sitting in the cab of a truck containing over 600 pounds of marihuana.

"Since appellant was not identified at the scene where the marihuana was found, we must look with even closer scrutiny at the independent facts from which we are to infer that he knew of and exercised control over the substance. The evidence presented by the State shows that appellant was seen in the company of Otley Smith of El Paso and that he traveled at least as far as Lovington, New Mexico in the Trans Am driven by Smith. The positive identification of appellant was made at Lovington. However, since the car was followed from Lovington to Bronco, Texas without stopping, and two people were observed as passengers in the car, we may reasonably conclude that appellant traveled as far as Bronco. However, the car was lost temporarily south of Bronco, and the passengers in the Trans Am were not viewed during the time the car was parked on the side road north of Bronco. The officers' testimony as to the time the car was parked in that location varied from twenty minutes to one and a half hours. One agent saw three people at the scene of the trailer, and only two were arrested. However, the agent could not identify that third person. The State's case requires a finding that: (1) the evidence circumstantially proves that

appellant was in the area where the marihuana was found, and (2) that his presence in the area combined with his association with Smith is sufficient to show knowledge and control over the contraband. We conclude that the evidence does not justify such a finding. * * *

"The question remains whether the evidence was sufficient to show that appellant was a party to the possession of marihuana [V.T.C.A., Penal Code, §§ 7.01, 7.02].... The State must prove that the defendant acted with intent to promote or assist in the commission of the offense by soliciting, encouraging, directing, aiding, or attempting to aid the other person in its commission. V.T. C.A., Penal Code, § 7.02(a)(2). This can be done by circumstantial evidence. *Ex parte Prior*, 540 S.W.2d 723 (Tex.Cr. App.1976). Further, the evidence is viewed in regards to events before, during and after commission of the offense. *Wygal v. State*, 555 S.W.2d 465 (Tex.Cr. App.1977); *Holloway v. State*, 525 S.W.2d 165 (Tex.Cr.App.1975).

"The only evidence in this case involving appellant was as to events before the offense occurred. The evidence shows that appellant was a passenger in the Trans Am driven by Smith for a prolonged period of time before the commission of the alleged offense. There is no evidence, however, of any aiding in the carrying out of the offense in any way other than riding in the car. We do not believe that the new party statute was intended to extend criminal liability to that extent. Absent other facts and circumstances showing that appellant encouraged or aided the criminal conduct, we hold the evidence to be insufficient."

In *Dubry v. State*, 582 S.W.2d 841 (Tex. Cr.App.1979), it was held that although evidence strongly suggested that defendants knew that marihuana was at the airport where it was unloaded from an airplane, evidence was insufficient to affirmatively link defendants to marihuana to such an extent that it could be inferred that they exercised care, control or management over

the marihuana and was therefore insufficient to support their convictions. See also *Heltcel v. State*, 583 S.W.2d 791 (Tex.Cr. App.1979); *Wilkes v. State*, supra; *Waldon v. State*, supra; *Sinor v. State*, 612 S.W.2d 591 (Tex.Cr.App.1981).

The State in the instant case contends there are "numerous independent facts from which to infer that defendant knew of and exercised control over the substance." It points to Gary Johnson's reference to his suppliers as "they" and reference to older fellows around 45 or 50 years old. It notes appellant admitted he was 52 years old and the Morrow was his business associate in other business enterprises. It relies heavily upon what it says is evidence appellant was at Gary Johnson's trailer house when Johnson first loaded contraband into the Dodge. It points to evidence appellant followed the Dodge to the North Hills Shopping Center, the second loading area, and that in his car trunk were found items similar to those found with the marihuana in the Dodge, the wallet with identification of the man to whom the white Ford was leased. It observes that appellant had on his person Gary Johnson's telephone numbers, a receipt linking him to a "Leland," and card with calculations roughly similar to the transaction in question. The State argues the unbelievability of appellant's story of why he was in Conroe and still in the vicinity shortly after the arrest of his co-defendants.

Appellant argues the evidence does not show he was ever in position to have viewed any marihuana, that he was never shown to be loading, unloading or otherwise handling the marihuana, that the marihuana was not shown to be located in a vehicle or on premises owned or controlled by him; that no marihuana was found on his person or in the vehicle he was driving, and that there was no odor of marihuana about him and he was not under the influence of marihuana.

One difficulty with the State's argument relates to the "contraband" loaded in the Dodge at Gary Johnson's trailer house. Deputy Johnson, observing from the helicopter, stated when the individual (apparently Gary Johnson) went to the shed and obtained "some kind of package," not very large, the other two individuals were not in a position to see Gary Johnson. There was no showing that Deputy Johnson ever identified anything found in the Dodge's trunk as even resembling that "some kind of package," and no showing the marihuana found was in similar packages. Deputy Bousquet and other officers present at the arrest of Gary Johnson were not called to testify. What all was in the trunk of the Dodge was not revealed. Deputy Pollock saw the open trunk from his position in another vehicle, and then testified as to the marihuana at the sheriff's office and being transferred to the chemist. Clearly the evidence that the "some kind of package" placed in the trunk of the Dodge by Gary Johnson at his trailer house contained "contraband" is nil. But, even if the evidence showed the package contained contraband, the conclusion would not be changed.

While the facts are "highly suspicious," *Waldon v. State*, supra; *Druby v. State*, supra, the State did not sustain its burden of proof that appellant was a party to the offense of possession of marihuana by Gary Johnson and Morrow. We cannot conclude that a rational trier of the facts could have found the essential elements of the offense. See *Jackson v. Virginia*, supra.

In view of our disposition, we need not reach the grounds of error regarding the hearsay testimony of Gary Johnson, the lack of probable cause to stop and search appellant's vehicle and the complained of jury argument.

The judgment is reversed and an acquittal is ordered in light of the decisions of the United States Supreme Court in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978). See also *Heltcel v. State*, supra; *Reyes v. State*, 575 S.W.2d 38, 40 (Tex.Cr. App.1979), and cases there cited.