In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-091 CR


____________________


 

ANA MARIA DELEON, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 04-04-02929 CR






MEMORANDUM OPINION



 A grand jury indicted Ana M. DeLeon in Montgomery County for cocaine possession. 
The indictment alleged that on February 19, 2004, DeLeon "did then and there intentionally
and knowingly possess a controlled substance . . . , namely, cocaine, in an amount of 400
grams or more[.]" See Tex. Health & Safety Code Ann. § 481.115(f) (Vernon 2003). 
DeLeon pled "not guilty," a jury convicted her, and the trial court sentenced her to ten years
in prison. 

 DeLeon claims the evidence is legally and factually insufficient to support the jury's
finding that she had knowledge of and exercised actual care, custody, control, or
management over the cocaine found in her car's battery compartment. In reviewing the legal
sufficiency of the evidence, an appellate court reviews all the evidence in the light most
favorable to the verdict to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Ross v. State, 133 S.W.3d 618,
620 (Tex. Crim. App. 2004)(citing Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781,
61 L.Ed.2d 560 (1979)). In reviewing the factual sufficiency of the evidence an appellate
court must determine whether, considering all the evidence in a neutral light, the jury was
rationally justified in finding guilt beyond a reasonable doubt. Zuniga v. State, 144 S.W.3d
477, 484 (Tex. Crim. App. 2004). A reviewing court may find the evidence factually
insufficient in two ways. Id. First, when considered alone, the evidence supporting the
verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Id. 
Second, after weighing the evidence supporting the verdict and the evidence contrary to the
verdict, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt
standard could not have been met. Id. at 484-85. It is the sole province of the jury to
determine the credibility of witnesses and to weigh contradictory testimony. Cain v. State,
958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). 

 While conducting surveillance of drug suspect Nelson Comandari on February 19,
2004, undercover DEA agents observed Comandari and Eric Pastor arrive at a mall parking
lot in Houston. The two men met with DeLeon and Gustavo Prera-Rodas around DeLeon's
Toyota Camry, which bore a Rhode Island license plate. According to agent Fattig, the four
individuals engaged in conversation for fifteen to twenty minutes. Fattig observed Prera-Rodas hand, what Fattig believed to be, the Camry's keys to Comandari. Comandari
appeared to explain something to the other three, while they all were looking at the vehicle's
engine. 

 Agent Fattig testified DeLeon and Prera-Rodas then entered the Sears store at the
mall. Pastor drove the GMC he arrived in and Comandari drove DeLeon's Camry to an Auto
Zone store and then to Comandari's residence. They remained at Comandari's for
approximately forty-five minutes, during which time an undercover agent observed the
Camry in the garage and Comandari there "with the hood up[.]" According to Agent Fattig,
Comandari and Pastor drove both vehicles back to Auto Zone and then to a Burger King
restaurant across from the mall. There, they again met with DeLeon and Prera-Rodas for
approximately twenty minutes. Fattig described the meeting as follows: "[A]ll four of them,
again, [got] up underneath the car, and they [were] having a big discussion . . . right around
the battery area[.]" He further testified all four of them "had their hands up underneath [the]
hood." The four drove back to the same Auto Zone with DeLeon and Prera-Rodas in the
Camry and Comandari and Pastor in the GMC. Agent Fattig testified Comandari, Prera-Rodas, and DeLeon looked under the hood for approximately forty minutes and they all were
conversing and gesturing around the battery area with "Ms. DeLeon right up there next to
them." Comandari and Pastor departed in the GMC and DeLeon and Prera-Rodas traveled
north on Highway 59 in the Camry. 

 Officer Lagoy testified he received a call from his DEA liaison requesting that he stop
a vehicle, described as a Camry with Rhode Island license plate 96467, heading north on
Highway 59. After observing the vehicle speeding and weaving in and out of traffic without
signaling, Officer Lagoy and his partner pulled the vehicle over in Montgomery County. 
Officer Lagoy interviewed DeLeon and Prera-Rodas individually. They both told Officer
Lagoy they were on their way to Dallas to tow vehicles and DeLeon owned the vehicle. 
DeLeon told Lagoy she was Prera-Rodas's sister-in-law. After obtaining consent to search
the vehicle, Officer Lagoy discovered "five kilos" of cocaine packed around a motorcycle
battery inside of the car battery casing. 

 According to DeLeon, she had transported vehicles across the United States for Prera-Rodas on other occasions for money. DeLeon testified Prera-Rodas contacted her on this
occasion and offered to pay her $500 to drive her car from her home state, Rhode Island, to
Oklahoma. There she would meet him and drive him back to Rhode Island. DeLeon claims
Prera-Rodas said he was transporting a vehicle in tow and the vehicle he was driving had a
damaged transmission, and he needed to return to Rhode Island. 

 On DeLeon's way from Rhode Island to Oklahoma, police officers in Tennessee
stopped and searched her vehicle but did not discover any narcotics. Almost to Oklahoma,
DeLeon claims she received a call from Prera-Rodas informing her that she needed to pick
him up in Amarillo instead of Oklahoma. Upon her arrival in Amarillo, Prera-Rodas
informed her they would need to pick up money for a vehicle in Houston. According to
DeLeon, she believed the purpose of the trip to Houston was to pick up money from
Comandari and Pastor. She asserts Prera-Rodas previously discovered white tape under the
hood while he was checking the oil. She claims the discussions under the hood of her car
were discussions she, Prera-Rodas, Comandari and Pastor had regarding fixing the tape, not
regarding drugs. She claims Prera-Rodas fixed the tape at the Auto Zone before they left
Houston and she had no knowledge of the cocaine in her car.

 To prove unlawful possession of a controlled substance, the State must establish the
defendant exercised actual care, custody, control, or management over the substance and the
defendant knew the substance was contraband. See Tex. Health & Safety Code Ann. §
481.002(38) (Vernon Supp. 2005), § 481.115(a) (Vernon 2003); Poindexter v. State, 153
S.W.3d 402, 405 (Tex. Crim. App. 2005). The State need not prove exclusive possession of
the contraband for conviction; control over contraband may be jointly exercised by more than
one person. McGoldrick v. State, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985); State v.
Derrow, 981 S.W.2d 776, 779 (Tex. App.--Houston [1st Dist.] 1998, pet. ref'd). However,
mere presence in the vicinity of a controlled substance does not, by itself, support a finding
that a person is in joint possession or is a party to an offense. Roberson v. State, 80 S.W.3d
730, 735 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd). If the accused is not in exclusive
possession of the place where the contraband is found, it cannot be concluded that the
accused had knowledge of and control over the contraband unless there are additional
independent facts and circumstances affirmatively linking the accused to the contraband. 
Poindexter, 153 S.W.3d at 406. An affirmative link may be established through either direct
or circumstantial evidence, and must establish that the defendant's connection to the
contraband was more than just fortuitous. Id. at 405-06. 

 Circumstances which may indicate an affirmative link include: "(1) the defendant's
presence when a search is conducted; (2) whether the contraband was in plain view; (3) the
defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was
under the influence of narcotics when arrested; (5) whether the defendant possessed other
contraband or narcotics when arrested; (6) whether the defendant made incriminating
statements when arrested; (7) whether the defendant attempted to flee; (8) whether the
defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether
other contraband or drug paraphernalia were present; (11) whether the defendant owned or
had the right to possess the place where the drugs were found; (12) whether the place where
the drugs were found was enclosed; (13) whether the defendant was found with a large
amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of
guilt." Olivarez v. State, 171 S.W.3d 283, 291 (Tex. App.--Houston [14th Dist.] 2005, no
pet.). The quantity of factors established is not as important as the degree to which they
affirmatively link the defendant to the contraband. Wallace v. State, 932 S.W.2d 519, 524
(Tex. App.--Tyler 1995, pet. ref'd). 

 There are sufficient affirmative links in this case. The cocaine was located in the
battery of DeLeon's vehicle. Agent Fattig testified he observed DeLeon actively involved
in three separate discussions with Comandari, Pastor, and Prera-Rodas under the hood of her
car the day of her arrest. Surveillance photographs of DeLeon around the hood of the Camry
were admitted into evidence. DeLeon exhibited a consciousness of guilt. She admittedly
lied to Officer Lagoy about being Prera-Rodas's sister-in-law. 

 Prera-Rodas testified DeLeon had agreed to assist him in transporting the cocaine to
New York and that she knew her car would be removed from the mall parking lot for the
purpose of packing the cocaine. (1) Her version of the facts does not include the meeting with
Prera-Rodas, Comandari, and Pastor in the mall parking lot prior to entering Sears or that
Comandari and Pastor returned with her car to Burger King. She also denies she knew her
car left the mall parking lot while she was in Sears. However, Prera-Rodas testified these
activities occurred, and Agent Fattig observed these activities while conducting surveillance. 
The jury as the trier of fact "is the sole judge of the credibility of the witnesses." Fuentes v.
State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). 

 Reviewing all the evidence in the light most favorable to the verdict in a legal
sufficiency review, we conclude a rational trier of fact could have found beyond a reasonable
doubt that DeLeon was guilty of the offense charged. Based on our factual sufficiency
review of the entire record, we conclude the jury was rationally justified in its verdict; the
verdict was not manifestly unjust or clearly wrong. Appellant's point of error is overruled. 
 AFFIRMED.

 __________________________________

 DAVID GAULTNEY

 Justice



Submitted on January 5, 2006

Opinion Delivered March 15, 2006

Do Not Publish


Before Gaultney, Kreger, and Horton, JJ.

 
1. Although Prera-Rodas was an accomplice witness, his testimony was largely
corroborated by the circumstantial evidence and Agent Fattig's testimony. See Tex. Code
Crim. Proc. Ann. art. 38.14 (Vernon 2005); Holladay v. State, 709 S.W.2d 194, 200 (Tex.
Crim App. 1986) (Accomplice witness's testimony must be both material and corroborated
by independent evidence tending to connect the accused with the offense.).