Affirmed and Memorandum Opinion filed February 19, 2008








Affirmed
and Memorandum Opinion filed February 19, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-01026-CR

____________

 

ZACHARY WINSLOW ALLEY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 180th
District Court

Harris County, Texas

Trial Court Cause No. 1033851

 



 

M E M O R A N D U M   O P I N I O N

A jury convicted appellant, Zachary Winslow Alley, of
possession with intent to deliver heroin and assessed punishment at twenty
years= imprisonment and
a $100 fine.  In his sole issue, appellant challenges the factual sufficiency
of the evidence.  We affirm.

Factual
and Procedural Background








On the night of July 13, 2005, appellant and Alberto
Montemayor were playing video games in the living room of the house located at
12322 Flushing Meadows Drive.  Three African-American men wearing masks kicked
in the front door and, brandishing firearms,  ordered appellant and Montemayor
to lie down and keep quiet.  When one of the gunmen shot a pit bull owned by
Montemayor, appellant retreated toward the back door of the house.  Once
outside, appellant was shot once in the back, but managed to climb over the
fence and escape to a neighbor=s house, where one of the occupants called
911.  Montemayor was not injured during the shooting, but the gunmen stole five
pounds of marijuana from the home.[1]


Officers Patrick Boone and Richard Pi_a were the first
to respond to the neighbor=s 911 call.  Officer Pi_a testified that,
while he was being treated by paramedics, appellant informed him Athat he was at his
house with his roommate, and guys came in shooting, three black guys came in
shooting and he ran out the back.@  He further
testified that (1) appellant told him that he lived at the house at 12322
Flushing Meadows; (2) appellant gave him the telephone number of the home at
the Flushing Meadows address as that of the residence where appellant  lived;
and (3) he noted this information in his offense report.  After appellant was
placed in an ambulance and transported to Ben Taub Hospital, Officers Boone and
Pi_a reported to the
house at 12322 Flushing Meadows.  When no one answered their knocks at the
front door, they began to search for another way into the home. Some moments
later, Montemayor  exited the front door of the house, visibly shaken and
nervous, and related the details of the robbery and shooting to the officers. 
At this point, neither Officer Boone nor Officer Pi_a knew whether the
gunmen were still in the house, or whether there were other shooting victims
present at the scene.








The officers entered the house to check for the presence of
the gunmen or other victims.  Upon entry, they immediately observed spent shell
casings and blood on the floor, and bullet holes in the wall.  Officer Pi_a continued to
question Montemayor about the robbery, while Officer Boone secured the
remainder of the house.  On the top shelf of the closet in one of the bedrooms,
Officer Boone found a brown paper bag, the contents of which were bundled in
brown packing tape and smelled like vinegar, an odor characteristic of heroin.[2] 
Officer Boone signaled Pi_a that he may have found some contraband in the
bedroom closet, and Pi_a placed Montemayor in handcuffs. The officers then
called robbery and narcotics detectives to investigate further.

Officer Roger Chappell of the robbery division and Officer
Robert Bradley of the narcotics division responded to the crime scene.  Officer
Chappell interviewed Montemayor, who then signed a written consent to search
the home.  Officers Boone and Pi_a turned over the heroin to Officer
Bradley, and Officer Chappell briefed him about the details of the robbery. 
Officer Bradley then interviewed Montemayor, who informed him that the gunmen
had stolen five pounds of marijuana from the home, and that there was a plastic
bag containing a small quantity of cocaine in the entertainment center in the
living room.  The amount of cocaine was less than one gram.

Officer Bradley then searched the bedroom where the heroin
was found to determine whose bedroom it was. On a television stand in that
bedroom, he found (1) a wallet containing appellant=s driver=s license; (2) a
credit card solicitation, dated March 7, 2005, addressed to appellant at the
Flushing Meadows address; and (3) a Harris County Justice of the Peace ADefendant
Information Form,@ dated September 7, 2004, listing
appellant=s mother=s address as his
home address, but the telephone number of the home at the Flushing Meadows
address as his home telephone number.  It also listed Macaroni Grill as his
employer.  On the same shelf in the closet where the heroin was found, Officer
Bradley found a Macaroni Grill receipt, dated May 29, 2005, listing appellant
as the waiter.  He also found several articles of men=s clothing in the
bedroom and specifically within the closet.








Officer Chappell later interviewed appellant at Ben Taub
Hospital.  Officer Chappell testified that appellant informed him that Ahe and his
roommate were watching TV and playing video games when two[3]
black, male suspects wearing camouflage masks broke into the house.  They
kicked the front door in on the house, brandishing pistols.  One of the dogs
inside the house attacked one of the suspects.  And the suspect shot the dog.@  He further
testified that appellant informed him that he became fearful of his own life
and started running toward the back door, that when he neared the door, he was
shot in the back, and that  he ran out the back door to the neighbor=s house and called
the ambulance and the police.  Officer Chappell also testified that appellant
gave the Flushing Meadows address as his home address.

Appellant was charged by indictment with the offense of
possession of over 400 grams of heroin with the intent to deliver.  He entered
a plea of not guilty.  The jury found appellant guilty as charged in the
indictment, and assessed punishment at twenty years= confinement in
the Texas Department of Criminal Justice, Institutional Division, and a $100
fine.  This appeal followed.

Analysis

Standard
of Review








In his sole issue, appellant argues the evidence is
factually insufficient to support his conviction.[4] 
We apply the usual standard of review. See Roberts v. State, 220 S.W.3d
521, 524 (Tex. Crim. App. 2007); Drichas v. State, 175 S.W.3d 795, 799
(Tex. Crim. App. 2005); Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim.
App. 2003); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).

Applicable
Law

A person commits the offense of possession with intent to
deliver heroin if he  knowingly or intentionally possesses heroin with the
intent to deliver it. See Tex.
Health & Safety Code __ 481.102(2), 481.112(a); Moreno,
195 S.W.3d at 325.  The State must show that (1) appellant exercised, either
singularly or jointly, actual care, custody, control, or management over the
controlled substance; (2) knew that he possessed a controlled substance; and
(3) had the intent to deliver the controlled substance. See Tex. Health & Safety Code __ 481.002(38),
481.112(a); see also Poindexter v. State, 153 S.W.3d 402, 405 (Tex.
Crim. App. 2005); McGoldrick v. State, 682 S.W.2d 573, 578 (Tex. Crim.
App. 1985) (noting the well-settled rule that possession of narcotics need not
be exclusive).  Possession with intent to deliver heroin may be proven by
direct or circumstantial evidence. See Moreno, 195 S.W.3d at 325 (citing
McGoldrick, 682 S.W.2d at 578; Patterson v. State, 138 S.W.3d
643, 649 (Tex. App.CDallas 2004, no pet.); Mack, 859
S.W.2d at 528).








When the contraband is not found on the accused=s person or when
the accused is not in exclusive possession of the place where the contraband is
found, additional facts and circumstances must link the accused to the
contraband.[5]
Poindexter, 153 S.W.3d at 406; McMillon v. State, 940 S.W.2d 767,
768B69 (Tex. App.CHouston [14th
Dist.] 1997, pet. ref=d). The State must establish this link
from the totality of the circumstances, demonstrating the accused=s knowledge of and
control over the contraband. Joseph v. State, 897 S.W.2d 374, 376 (Tex.
Crim. App. 1995).  Texas courts have identified several factors that may help
to establish a sufficient link between the accused and the contraband, though
none is necessarily determinative:

1)  whether there were other persons present at the time of the search
and whether they were shown to be living on the premises so that appellant was
not actually in exclusive possession of the contraband, Damron v. State,
570 S.W.2d 933, 936 (Tex. Crim. App. 1978); Langford v. State, 632
S.W.2d 650, 651 (Tex. App.CHouston [14th Dist.] 1982, no pet.);

2)  whether the defendant owned or had the right to possess the place
where the narcotics were found, Swarb v. State, 125 S.W.3d 672, 684
(Tex. App.CHouston [1st Dist.] 2003, pet. dism=d);

3)  whether the contraband, if found in a bedroom closet, was in a
closet that contained appellant=s personal belongings or men=s clothing if the appellant is male, Damron, 570
S.W.2d at 936; Langford, 632 S.W.2d at 651;

4)  whether there is any other evidence establishing appellant=s occupancy of the premises, Williams
v. State, 498 S.W.2d 340, 341 (Tex. Crim. App. 1973); and

5)  whether the amount of
contraband found was large enough to indicate that appellant knew of its
presence, Ex parte Stowe, 744 S.W.2d 615, 617 (Tex. App.CHouston [1st
Dist.] 1987, no pet.) (citing Pollan v. State, 612 S.W.2d 594, 596 (Tex.
Crim. App. 1981)).

When examining these links, it is not the number of factors
present, but the logical force they have in establishing the elements of the
offense. Moreno, 195 S.W.3d at 326 (citing Gilbert v. State, 874
S.W.2d 290, 298 (Tex. App.CHouston [1st Dist.] 1994, pet. ref=d)).  We now turn
to appellant=s specific arguments.

Application
of Law to the Facts








Appellant argues, quite simply, that the State did not
prove that he possessed the heroin found at the Flushing Meadows address.  He
contends that the State failed to prove that he was anything more than an
invitee at that address, regardless of the amount of time he was seen there. 
Appellant further suggests that Montemayor placed the heroin in the bedroom
closet where it was eventually recovered by Officer Boone.  In support of his
factual sufficiency challenge, appellant points to his mother=s testimony that
he resided with her from 2001 until the time of trial, and his own testimony
that he was nothing more than a frequent overnight guest at the Flushing
Meadows address.  Appellant also points to several documents which, in his
estimation, proved that he resided with his mother as of the night of the
robbery and not at the Flushing Meadows address: (1) an unopened bank
statement; (2) solicitations from Compass Bank and Capitol One; (3) a jury
summons; and (4) a Nextel telephone bill.  All of these documents were
addressed to appellant at his mother=s address.








Although this testimony and the addressing on the foregoing
documents support appellant=s position, other evidence points to his
guilt.  Officers Pi_a and Chappell both testified that appellant informed
them, individually, that he lived at the Flushing Meadows address, and Pi_a further
testified that appellant gave him the telephone number of the Flushing Meadows
address as that of the residence where he lived.  In addition, both officers
testified that appellant referred to Montemayor as his Aroommate@ during their
respective interviews.  Five of appellant=s and Montemayor=s friends[6]
testified that appellant lived at the Flushing Meadows address.  Richard
Manross, the neighbor from whose house the 911 call was made the night of the
robbery, also testified that he saw appellant at the Flushing Meadows address
every other day for the eighteen-month period preceding the robbery, and that
on this basis he believed that appellant lived there.

Furthermore, there was testimony and other evidence
establishing that appellant=s bedroom was the same room as that where
the heroin was found.  Two of appellant=s and Montemayor=s friends
testified to that effect.  In addition, appellant=s wallet, his ADefendant
Information Form,@ and a credit card solicitation addressed
to appellant were found in the bedroom where Officer Boone recovered the
heroin.  As noted above, the Defendant Information Form listed the telephone
number of the Flushing Meadows address as appellant=s home telephone
number, and the solicitation was addressed to appellant at the house on
Flushing Meadows.  And, on the same shelf in the closet where the heroin was
found, Officer Bradley found appellant=s Macaroni Grill
receipt.  Several articles of men=s clothing were
also found in that bedroom and within that same closet.








This evidence established a sufficient link between
appellant and the heroin. See Cooper v. State, 852 S.W.2d 678, 681 (Tex.
App.CHouston [14th
Dist.] 1993, pet. ref=d) (finding envelopes addressed to the
accused in bedroom where cocaine was found and the accused=s wallet in an
adjacent bedroom constituted sufficient links between the accused and the
contraband); LaPorte v. State, 800 S.W.2d 270, 273 (Tex. App.CHouston [14th
Dist.] 1990), aff=d, 840 S.W.2d 412
(Tex. Crim. App. 1992) (finding receipts listing the name of the accused and
envelopes addressed to the accused in a desk drawer with methamphetamine
constituted sufficient links between the accused and the contraband); see
also Classe v. State, 840 S.W.2d 10, 12 (Tex. App.CHouston [1st
Dist.] 1992, pet. ref=d) (finding that presence of men=s clothes in
bedroom where cocaine seized constituted sufficient link between the accused,
who was male, and the contraband); Stowe, 744 S.W.2d at 617 (finding
that presence of men=s clothes and the accused=s personal
belongings in the closet where methamphetamine was recovered constituted
sufficient links between the accused, who was male, and the contraband).

Finally, there was evidence that the amount of heroin
recovered was a relatively large amount, and had a distinctive smell. 
According to Officer Bradley=s testimony, the amount of heroin found in
the bedroom closetC507.8 gramsCwas equivalent to,
at a minimum, over 500 personal uses.  Officer Boone also testified that he
detected Aa very distinct vinegar, almost a urine smell@ in that bedroom
closet when he picked up the bag containing the heroin.[7] 
This evidence constitutes a sufficient link between appellant and the heroin. See
Stowe, 744 S.W.2d at 618 (finding that a recovery of a large amount of
methamphetamine, coupled with the distinctive smell of methamphetamine in the
area where it was recovered, constitute sufficient links between the accused
and the contraband).

Viewing the evidence neutrally, we conclude that the
evidence supporting the verdict is not so weak that the verdict seems clearly
wrong and manifestly unjust, nor was the supporting evidence outweighed by the
great weight and preponderance of the contrary evidence so as to render the
verdict clearly wrong and manifestly unjust. See Roberts, 220 S.W.3d at
524.  The contrary evidence cited by appellant fails to demonstrate that
appellant did not exercise care, custody, control, or management over the
heroin found in the bedroom closet.  And, to the extent that there was any
contradictory evidence, we note that the jury, as the trier of fact, is the
sole judge of the credibility of witnesses and the weight to be given to
testimony. Cain, 958 S.W.2d at 407.  Thus, we hold that the evidence is
factually sufficient to support appellant=s conviction.  We
therefore overrule appellant=s sole issue.








Conclusion

Having addressed and overruled appellant=s sole issue, we
affirm the judgment of the trial court.

 

 

/s/      Wanda McKee Fowler

Justice

 

 

Judgment rendered
and Memorandum Opinion filed February 19, 2008.

Panel consists of
Justices Fowler, Frost, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]  The investigating officers were never able to locate the gunmen, and no
charges were ever filed regarding the robbery.





[2]  Officer Rosaura Rodriguez, a chemist with the Houston Police Department
crime laboratory, later determined that the bag contained 507.8 grams of black
tar heroin.





[3]  There was conflicting testimony as to whether there
were two or three gunmen involved in the robbery.  However, this discrepancy is
not material for the purposes of the present appeal.





[4]  Appellant=s factual sufficiency challenge is
premised solely on the possession element of the charged offense.  Accordingly,
we address only that aspect of the offense. 
However, we note that Officer Bradley=s
testimonyCthat an amount of heroin for personal use can range
anywhere from 0.2 grams to one gram, and that the amount allegedly possessed by
appellant, over 500 grams, was Aabsolutely not@ for personal useCwas
sufficient to prove the intent to deliver element of the charged offense. See
Moreno v. State, 195 S.W.3d 321, 326 (Tex. App.CHouston [14th Dist.] 2006, pet. ref=d) (citing Mack v. State,
859 S.W.2d 526, 529 (Tex. App.CHouston [1st Dist.] 1993, no pet.)) (AExpert testimony by experienced law enforcement officers may be used to
establish an accused=s intent to deliver.@).





[5]  Although the requisite connection between the
accused and the contraband was once referred to as an Aaffirmative link,@ we
now refer to it simply as a Alink.@ See Evans v. State, 202 S.W.3d 158, 161 n.9
(Tex. Crim. App. 2006).





[6]  Crystal Zink, Gebron Alvarez, John Ganz, James
Broyles, and Brandon Chaney each testified to the effect that appellant lived
at the Flushing Meadows address, and that his bedroom was the one where the
heroin was found.  Zink, an ex-girlfriend of Montemayor=s brother and former occupant of the Flushing Meadows
address, testified that appellant moved into that house in November or December
2003, a few months after she moved out.  Alvarez, Montemayor=s friend since high school, testified that appellant
had introduced himself as Montemayor=s Aroommate,@
and that appellant was at the Flushing Meadows address every time Alvarez came
over to visit Montemayor, which was once every three months.  Ganz, a friend of
appellant=s and Montemayor=s
since junior high, testified that he Aabsolutely@ believed that appellant lived at the Flushing Meadows
address, that he had this belief for at least one year, and that it was Acommon knowledge@
and Aa widely known fact@
that appellant=s bedroom was the same room as that where the heroin
was found.  Broyles, a friend of Montemayor=s since
high school and a flooring contractor who employed appellant on at least two
occasions, testified that it was his understanding that appellant was
Montemayor=s roommate; that he would call the phone number at the
Flushing Meadows address in order to contact appellant about work; that, when
questioned about where he lived, appellant told him he lived at the Flushing
Meadows address; and that appellant was present at that address every time
Broyles visited, which was once or twice each month.  Chaney, also a friend of
appellant=s and Montemayor=s
since junior high, testified that, at the time of the robbery, appellant had
lived at the Flushing Meadows address for at least one year, that appellant was
usually at that address every time Chaney came over to visit, which varied from
once to four times each week, that he believed that appellant paid the
telephone bill at that address, that appellant kept his belongings, slept, and
showered at that address, that appellant=s
bedroom was the same room as that where the heroin was found, and that Chaney
knew that this bedroom was appellant=s
because appellant kept his clothes and played video games in that bedroom, and
Chaney personally saw appellant in that room.





[7]  Apparently, the smell of vinegar is characteristic of heroin. See Hinojosa v. State, No. 03-00-00489-CR, 2001 WL 1044630, at *2 (Tex. App.CAustin Sept. 13, 2001, no pet.) (not designated for
publication); see also Contreras v. State, No. 05-00-00187-CR, 2001 WL
569267, at *2 (Tex. App.CDallas May 29, 2001, no pet.) (not designated for
publication).