In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-00553-CR


____________________



DANIEL BRUNO, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the Criminal District Court


Jefferson County, Texas


Trial Cause No. 97211






MEMORANDUM OPINION


 A jury convicted appellant Daniel Bruno, a habitual felony offender, of possession of
a controlled substance, and the trial court assessed punishment at twenty-five years of
confinement. Bruno then filed this appeal, in which his sole contention is that the evidence
was legally insufficient to support his conviction. We affirm.

 Detective Randy Moss of the Beaumont Police Department testified that he came into
contact with Bruno while executing a search warrant at a residence. According to Detective
Moss, Bruno was specifically named in the search warrant, and the residence had a reputation
for drug trafficking. Detective Moss explained that an entry team of six to eight SWAT
officers secured the residence, and Detective Moss then left the residence to execute another
search warrant, leaving Detective Scott Apple in charge at the residence where Bruno was
found. Detective Moss testified that the second search warrant was for another residence,
and Bruno's sister, Sametris Bruno, was identified in that warrant. Detective Apple
subsequently arrived at Sametris's residence and gave Detective Moss a pill bottle that was
believed to contain crack cocaine, and Detective Moss learned that the pill bottle had been
found in a men's black leather jacket in the closet of Bruno's bedroom. Detective Moss field
tested the substance, and the results indicated that it was cocaine. When officers executed
the search warrant at Sametris's residence, they found crack cocaine and arrested Sametris. 
Detective Moss testified that both Bruno and Sametris are drug dealers. 

 Detective Apple testified that he participated in the execution of a search warrant as
co-case agent for Detective Moss. When Detective Apple entered the residence, Bruno was
in the living room on the sofa. Bruno did not attempt to flee or to conceal anything.
Detective Apple explained that he was responsible for searching the residence, and he began
his search in Bruno's room. According to Detective Apple, the closet contained "a lot of
clothes" that were in the plastic bags from the cleaners, marked with Bruno's name, but there
was a leather jacket that was not in a plastic bag. Detective Apple testified that because of
the volume of clothing in the closet, he assumed that it belonged to someone who had been
in the residence for some time, and that "it would be all of their clothes." When Detective
Apple reached into the pocket of the leather jacket, he found a pill bottle in the pocket, and
he transported the bottle to Detective Moss. According to Detective Apple, the pill bottle
contained square-shaped off-white rocks that appeared to be crack cocaine. (1) While searching
Bruno's bedroom, Detective Apple also observed a photograph of Bruno and a child, as well
as a Texas identification card that contained Bruno's photograph, name, and address. In
addition, Detective Apple found some cash under Bruno's bed, as well as mail addressed to
Bruno at that residence. When Detective Apple told Bruno about the crack cocaine in the
pocket of his jacket, Bruno told Detective Apple "that he had just got the jacket back from
someone he had loaned it to." 

 Bruno's mother, Mary Bruno, testified that she was renting the residence where Bruno
was living. According to Mary, her daughter Sametris previously lived there, and Mary
asked Sametris to leave because Sametris was selling cocaine. Mary testified that Sametris
had moved out approximately two weeks before the police searched the residence. Mary
explained that while Bruno was living with her, he was not engaging in the same type of
activities that Sametris had done. 

 Sametris testified that her mother asked her to move out because she was using and
selling cocaine. According to Sametris, while she was living in the room, some of Bruno's
belongings were there. Sametris testified that when she learned that the police had executed
a search warrant at her mother's residence, she became concerned about some cocaine that
she had left in Bruno's jacket. Sametris testified that she had not previously come forward
to claim responsibility for the drugs in Bruno's jacket. According to Sametris, Bruno was
lying when he told the police that he had lent the jacket to someone. 

 In performing a legal sufficiency review, an appellate court must view the evidence
in the light most favorable to the verdict to determine whether a rational fact finder could
have found each element of the offense beyond a reasonable doubt. Ross v. State, 133
S.W.3d 618, 620 (Tex. Crim. App. 2004) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99
S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The jury is the ultimate authority as to the credibility
of witnesses and the weight to be given to their testimony. Penagraph v. State, 623 S.W.2d
341, 343 (Tex. Crim. App. 1981).

 "To prove unlawful possession of a controlled substance, the State must first prove
appellant exercised actual care, control and management over the contraband and second,
that appellant had knowledge the substance in his possession was contraband." Nixon v.
State, 928 S.W.2d 212, 215 (Tex. App.--Beaumont 1996, no pet.) (citing King v. State, 895
S.W.2d 701, 703 (Tex. Crim. App. 1995)). The State need not prove exclusive possession
of the contraband, since control over contraband may be jointly exercised by more than one
person. McGoldrick v. State, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985); State v. Derrow,
981 S.W.2d 776, 779 (Tex. App.--Houston [1st Dist.] 1998, pet. ref'd). However, "mere
presence at a place where contraband is being used or possessed by others does not justify 
finding that a person is in joint possession or is a party to an offense." Roberson v. State, 80
S.W.3d 730, 735 (Tex. App.--Houston [1st Dist.] 2002, pet. ref'd).

 When an accused is not in exclusive possession of the location where contraband is
found, additional independent facts and circumstances may affirmatively link him to the
contraband. Nixon, 928 S.W.2d at 215. An affirmative link may be established through
either direct or circumstantial evidence, and it must show that the accused's connection to
the contraband was more than fortuitous. Poindexter v. State, 153 S.W.3d 402, 405-06 (Tex.
Crim. App. 2005). Factors that tend to establish affirmative links include: 

 (1) the contraband was in plain view;

 (2) the accused was the owner of the premises in which the contraband was found;

 (3) the contraband was conveniently accessible to the accused;

 (4) the contraband was found in close proximity to the accused;

 (5) a strong residual odor of the contraband was present;

 (6) paraphernalia to use the contraband was in view or found near the accused;

 (7) the physical condition of the accused indicated recent consumption of the
contraband in question;

 (8) conduct by the accused indicated a consciousness of guilt;

 (9) the accused had a special connection to the contraband;

 (10) the place where the contraband was found was enclosed;

 (11) the occupants of the premises gave conflicting statements about relevant
matters; and

 (12) affirmative statements connect the accused to the contraband.


Nixon, 928 S.W.2d at 215. "It is . . . not the number of links that is dispositive, but rather the
logical force of all of the evidence, direct and circumstantial." Evans v. State, 202 S.W.3d
158, 162 (Tex. Crim. App. 2006).

 In this case, Bruno was inside the premises in which the drugs were found, and the
State introduced evidence that Bruno was receiving mail at that address. Additionally, the
officers found cash under Bruno's bed, and his bedroom also contained an identification card
and a photograph of him with a child. The drugs were found in Bruno's jacket inside his
closet, which also contained clothing from the dry cleaners marked with Bruno's name.
Bruno told Detective Apple that the jacket belonged to him. The trier of fact could have
disbelieved both Sametris's testimony that the cocaine belonged to her, as well as Bruno's
statement to Detective Apple about having recently lent the jacket to someone. Reviewing
all of the evidence in the light most favorable to the verdict, we conclude that sufficient
affirmative links exist, and a rational trier of fact could have found Bruno guilty of the
charged offense beyond a reasonable doubt. See Ross, 133 S.W.3d at 620; Penagraph, 623
S.W.2d at 343; Nixon, 928 S.W.2d at 215. The evidence is legally sufficient to support
Bruno's conviction. We overrule issue one and affirm the trial court's judgment.

 AFFIRMED.


 __________________________________

 CHARLES KREGER

 Justice


Submitted on January 2, 2009

Opinion Delivered February 4, 2009

Do not publish


Before Gaultney, Kreger, and Horton, JJ.
1. Emily Esquivel, a forensic analyst at the Jefferson County Crime Lab, testified
that she tested the substance recovered from Bruno's jacket and determined that it was
10.68 grams of cocaine.