

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-08-00146-CR

_____

DARRELL JENKINS, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court
Dallas County, Texas
Trial Court No. F07-51595-QN

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

Jose Landa's birthday celebration ended tragically around midnight near a Dallas[1] automatic teller machine, when he was killed by an armed robber's bullet. The group celebrating Landa's birthday included his wife, his wife's sister, and the sister's boyfriend. The group left a bar on Cedar Springs Road shortly before midnight, and Landa went to a nearby ATM and withdrew some money. As Landa rejoined his friends and wife, a person described as a tall black man with a bandanna partly covering his face, "high cheek bones," and a "really tight" thing on his hair appeared, pointed a gun at Landa, and demanded "everything you have." When the robber grabbed for Landa's necklaces, Landa reached for him and was shot dead. The assailant turned and ran, joining three other men, who all ran away.

In the aftermath of the shooting, Darrell Jenkins was arrested, charged, tried, and convicted, at jury trial, of capital murder. From a sentence of life imprisonment, Jenkins appeals, arguing only that the evidence is factually insufficient to support his conviction. Finding the evidence factually sufficient, we affirm the judgment of the trial court.

In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly

[1]This case was transferred to this Court from the Fifth District Court of Appeals in Dallas as part of the Texas Supreme Court's docket equalization program. We are not aware of any conflict between the precedent of the Dallas Court and the precedent of this Court on any issue relevant in this appeal. *See* TEX. R. APP. P. 41.3.

unjust. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008); *Roberts v. State*, 220 S.W.3d 521, 524 (Tex. Crim. App. 2007); *Clewis v. State*, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). In this review, we are to afford "due deference" to a jury's determinations. *Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006). Even if contradictory witness testimony may be compelling, the jury is the sole judge of what weight to give to such testimony. *Lancon*, 253 S.W.3d at 705. We are to afford "almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Id.* (citing *Marshall*, 210 S.W.3d at 625). "Although an appellate court reviewing factual sufficiency has the ability to second-guess the jury to a limited degree, the review should still be deferential, with a high level of skepticism about the jury's verdict required before a reversal can occur." *Roberts*, 220 S.W.3d 524.

The standard of factual review to be applied on appeal is the same regardless of whether the State uses direct or circumstantial evidence. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995); *McGoldrick v. State*, 682 S.W.2d 573, 577 (Tex. Crim. App. 1985). A person's identity can be proved by either direct or circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986).

The evidence in this case is conflicting and not without flaws. With the exception of the victim, his family, police, and two passersby, other witnesses were identified by at least two names—their real names and street names—had police records, and were admittedly drug users or

3

male prostitutes. It appears that several may have been gang members. To say that their testimony was not entirely consistent is an understatement.

Jenkins argues that the record does not support his conviction because there is no physical evidence linking him and the crime; because a major witness for the State, Rodney Butler, cannot be believed; because the descriptions of the robber's physical characteristics do not support the State's case; because a "jailhouse confession" is questionable; and because the record, therefore, shows the existence of an alternative reasonable hypothesis.

While the record contains no physical evidence such as fingerprints, ballistics tests, or DNA reports to prove guilt, the absence of such evidence does not prevent the State from proving its case. In this case, the State presented evidence that Jenkins admitted to a cellmate that he had committed the murder; that he had a gun the night of the murder; that he was in the immediate area about ten minutes before the murder;[2] that he ran away; that he was involved in discussions with other individuals about the way a robbery was mishandled; and that, when an individual in the house in which he was hiding wanted to open the door to police, Jenkins warned that everyone in the house would be killed if he got caught.

In evidence is the police interview of Butler in which he stated he saw Jenkins pointing a gun at Landa's head. Jenkins points out that Butler recanted those interview statements on the witness stand and suggests that his story is thus unbelievable. Butler had first denied knowledge of the

_____

[2]Jenkins was identified by his ex-lover, Mitchell Polk, who volunteered his suspicions to police, essentially that he was sure the actors had to be the men he had seen ten minutes earlier.

murder, then had set out details of the offense when Detective Randy Loboda interviewed him, and finally had recanted those details when he testified at trial.

Butler testified that he had simply followed Loboda's lead during the interview and provided the information he thought Loboda wanted. Butler explained that he thought he had been named as the shooter rather than Jenkins and that he was just trying to protect himself in identifying Jenkins as the shooter. In the interview, however, Butler did not simply agree with Loboda's statements or leading questions. The interview was directed, but that is not the whole story. Many critical bits of information were not provided by Loboda, but were filled in by Butler as the interview progressed and as he explained how Butler was not involved in the shooting.

The State also introduced testimony about a "jailhouse confession" in which Jenkins had told a cellmate that he had killed a man near an ATM and that the only thing he got was two gold necklaces. Counsel correctly points out that the evidence shows that one of the necklaces was silver. That discrepancy, however, does not require the remainder of the testimony to be disregarded.

There are also discrepancies in the testimony about how the four people in Jenkins' group fled, whether together or separately. Similarly, the described height of the shooter was inconsistent. Most of the evidence was that he was about the height of Landa (the tallest of the four people in the victim group) at about six feet, while Jenkins is about six feet, three inches tall. These are discrepancies in testimony; as such, the weight of such testimony is for the jury to determine.

Even if contradictory witness testimony is compelling (and the contradictory testimony here is not), the jury is the sole judge of what weight to give to such testimony. *Lancon*, 253 S.W.3d at 705. We are required to afford "almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Id.* (citing *Marshall*, 210 S.W.3d at 625). This is a classic situation in which the credibility of the witnesses is the paramount determination of the jury.

Here, the proof is not so weak that it must be disregarded; and, despite counsel's able argument about the lack of believability of certain witnesses, we find no troop of unassailable Boy Scouts establishing a theory contrary to the picture painted by the assertedly incredible witnesses for the State. *See Goodman v. State*, 66 S.W.3d 283, 285 (Tex. Crim. App. 2001).

The evidence is factually sufficient to support the verdict.

We affirm the judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     March 16, 2009
Date Decided:       March 17, 2009

Do Not Publish

6