COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ANDRES BUNSOW, | § | No. 08-07-00066-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 34th Impact Court |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC#20040D01280) |
| | § | |

**O P I N I O N**

Appellant, Andres Bunsow, was convicted of possession of marijuana in an amount of more than five pounds, but less than fifty pounds. He was sentenced to seven years suspended sentence. Appellant was placed on community supervision for seven years; he now appeals his conviction.

At the time of the Appellant's arrest, Detectives Monica Montes and Javier Monreal were both narcotics officers with the El Paso Police Department. On February 25, 2004, they were conducting surveillance on a confidential informant from a car parked at a Whataburger on Dyer Street.

During their surveillance, the detectives noticed a white SUV and a white pickup truck, parked approximately fifteen feet from their location. The detectives saw a passenger get out of the SUV and walk towards the pickup, which Appellant and the driver were in. The passenger from the SUV walked up to the passenger-side window of the pickup truck, leaned in, and spoke with both the driver and the passenger (Appellant) for about a minute. After this brief conversation, the man walked back to the SUV. During Appellant's trial, Detective Montes

stated that this behavior caught her attention, because, when most people are parked in a restaurant parking lot, they get out and go eat with the people they are going to meet. The man from the SUV walked back to his vehicle, opened the driver's side back door, and pulled out a heavy black duffle bag. Detective Montes could tell that it was heavy, because it was not the type of thing you could hold with just one hand. The man from the SUV walked back to the pickup, handed the bag through the passenger side window of the pickup, and then talked to the occupants of the pickup truck for less than a minute. On cross-examination, Detective Montes admitted that she could not hear this brief conversation, and she could not tell what the contents of the duffle bag were. The man from the SUV walked back to his vehicle and got in, and they drove away. At this point, Detective Monreal, an experienced narcotics investigator, concluded that a drug transaction had occurred.

The detectives decided to follow the pickup truck, which is where the duffle bag was then located. When the pickup pulled out onto Gateway Boulevard, the passenger-side window was still open, and the detectives were able to observe that Appellant did not have his seatbelt on. Detective Montes got on her radio and notified a supporting K-9 unit that they had just seen another drug transaction. She requested that the K-9 unit follow the pickup, and she explained that the passenger in the white pickup was not wearing his seatbelt, which is a ticketable offense. Officer Dirk Hiltl, the K-9 unit officer with whom Detective Montes spoke, identified the pickup truck and began to follow it, while still communicating with the detectives. Around the same time, Detective Montes saw a marked police unit in the area. She flagged it down and requested that Officer Stokes assist the K-9 unit in the traffic stop. The detectives then drove off to observe the traffic stop.

Officer Hiltl and his dog Duke, an experienced K-9 team with the El Paso Police

Department trained in narcotics detection, observed the white pickup on which he had been asked to conduct a traffic stop. He testified that "[t]he pickup truck was traveling northbound on Gateway North, stopped at the intersection of Hercules and Gateway North." Officer Hiltl confirmed that the passenger was not wearing his seat belt, and, after the pickup truck was in a safe location, he activated his overhead lights to conduct the traffic stop. The pickup did not stop, forcing Officer Hiltl to activate his air horn. Officer Hiltl stated that the air horn was necessary, because sometimes, on bright days, people have trouble seeing the overhead lights. The pickup turned westbound onto Dyer and then pulled over. Officer Hiltl noticed, while he was effectuating the stop, that the passenger raised his arm up and brought it back down several times. In all, it took the pickup truck about one-quarter of a mile to stop.

Officer Hiltl exited his vehicle and approached the pickup truck, asking for the driver's license and proof of insurance. When the driver handed his license to the officer, his hand was shaking, which Officer Hiltl indicated was normal, but Appellant (the passenger) was looking straight forward, not making eye contact, which Officer Hiltl found odd. The driver was not able to produce proof of insurance during the stop. Officer Stokes showed up at the traffic stop. Because Officer Hiltl was having trouble communicating, he had Officer Stokes, who speaks better Spanish, translate for him. Officer Hiltl asked the driver to step out of the pickup and move to its rear. He told the driver, with the aid of Officer Stokes, that he had been pulled over because the passenger was not wearing a seat belt. Officer Stokes asked the driver whether he would consent to a sniff search of his vehicle, but the driver refused such consent. The driver did consent to a search of his person. Officer Stokes, translating for Officer Hiltl, explained that he was permitted, by law, to conduct an exterior scent search of the vehicle. The driver nodded his head, Appellant was moved to the back of the pickup, and both the driver and the passenger were

placed in the back of the patrol unit for safety.

Duke conducted a sniff search of the exterior of the pickup. When Officer Hiltl and Duke came to the passenger-side window, which was open, Duke attempted to jump in the window. Officer Hiltl testified that Duke's behavior indicated that he had recognized the odor of narcotics and that he wanted to get inside the pickup to find the source. Officer Hiltl allowed Duke to enter the vehicle, and he went directly to a duffle bag that was sitting between the driver's and passenger's seats. He indicated to Officer Hiltl that the odor of narcotics was coming from the duffle bag. Officer Hiltl unzipped the duffle bag, and inside were brown taped bundles, consistent with the way narcotics are packaged. It was later determined that the bundles, found in the duffle bag, contained 24.60 pounds of marijuana. No latent fingerprints were found on or inside the bundles.

After the State had concluded presenting its evidence, Appellant rested without presenting any evidence.

In his sole issue before this Court, Appellant contends that the evidence was legally insufficient to sustain his conviction.

In reviewing the legal sufficiency of the evidence, we are constrained to view the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could find the essential elements of the offense, as alleged in the application paragraph of the charge to the jury, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979). More particularly, sufficiency of the evidence should be measured by the elements of the offense, as defined by the hypothetically-correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 239-40 (Tex.Crim.App. 1997).

Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable

doubt. *Dwyer v. State*, 836 S.W.2d 700, 702 (Tex.App.–El Paso 1992, pet. ref'd). We do not resolve any conflict in fact, weigh any evidence, or evaluate the credibility of any witnesses, so the fact-finding results of a criminal jury trial are given great deference. *Menchaca v. State*, 901 S.W.2d 640, 650-52 (Tex.App.–El Paso 1995, pet. ref'd); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991); *Leyva v. State*, 840 S.W.2d 757, 759 (Tex.App.–El Paso 1992, pet. ref'd); *Bennett v. State*, 831 S.W.2d 20, 22 (Tex.App.–El Paso 1992, no pet.). Instead, our only duty is to determine whether both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Adelman*, 828 S.W.2d at 421-22. In so doing, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson*, 819 S.W.2d at 843, *quoting Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988). The trier of fact, not the appellate court, is free to accept or reject all or any portion of any witness's testimony. *Belton v. State*, 900 S.W.2d 886, 897 (Tex.App.–El Paso 1995, pet. ref'd).

Unlawful possession requires the "State . . . prove two elements: (1) that the accused exercised care, control and management over the contraband; and (2) that the accused knew the matter was contraband." *Martin v. State*, 753 S.W.2d 384, 386 (Tex.Crim.App. 1988), *citing Nunn v. State*, 640 S.W.2d 304 (Tex.Crim.App. 1982); *Davila v. State*, 930 S.W.2d 641, 644-45 (Tex.App.–El Paso 1996, pet. ref'd). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result." TEX.PENAL CODE ANN. § 6.03(b)(Vernon 2003).

To prove knowledge and control, the State had the burden to prove an "affirmative link"

between the Appellant and the marijuana contained in the pickup, because, in the present case, no direct evidence exists that Appellant knowingly or intentionally possessed the marijuana. *See* TEX.HEALTH & SAFETY CODE ANN. § 481.115(a)(Vernon 2003); *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App. 1985); *Brown v. State*, 911 S.W.2d 744 (Tex.Crim.App. 1995); *Menchaca*, 901 S.W.2d at 651. An affirmative link generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it. *Brown*, 911 S.W.2d at 747. Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called 'affirmative links' rule." *Id.* The Court of Criminal Appeals has held that, "[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Deshong v. State*, 625 S.W.2d 327, 329 (Tex.Crim.App. [Panel Op.] 1981).

Factors we consider include (1) the defendant's presence when the search warrant was executed, (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the narcotic, (4) whether the defendant was under the influence of narcotics when arrested, (5) whether the defendant possessed other contraband or narcotics when arrested, (6) whether the defendant made incriminating statements when arrested, (7) whether the defendant attempted to flee, (8) whether the defendant made furtive gestures, (9) whether there was an odor of the contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether the defendant owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether the accused was the driver of the automobile in which the contraband was found, (14) whether the defendant was

found with a large amount of cash, and (15) whether the conduct of the accused indicated a consciousness of guilt. *Tucker v. State*, 183 S.W.3d 501, 510 (Tex.App.–Fort Worth 2005, no pet.), *citing McQuarters v. State*, 58 S.W.3d 250, 259 (Tex.App.–Fort Worth 2001, pet. ref'd).

The number of factors linking an accused to the contraband is less important than their logical force in establishing the elements of the offense. *See Jenkins v. State*, 76 S.W.3d 709, 713 (Tex.App.–Corpus Christi 2002, pet. ref'd); *see also Jones v. State*, 963 S.W.2d 826, 830 (Tex.App.–Texarkana 1998, pet. ref'd); *Gilbert v. State*, 874 S.W.2d 290, 298 (Tex.App.–Houston [1st Dist.] 1994, pet. ref'd). The baseline is that proof amounting to a strong suspicion or a probability of guilt will not suffice. *See Hall v. State*, 86 S.W.3d 235, 240 (Tex.App.–Austin 2002, pet. ref'd).

There must be an affirmative link between an accused and the drugs to the degree that a reasonable inference may arise that he knew that the drugs existed and where they were kept. *See Gutierrez v. State*, 628 S.W.2d 57, 60 (Tex.Crim.App. [Panel Op.] 1982), *overruled on other grounds by Chambers v. State*, 711 S.W.2d 240, 247 (Tex.Crim.App. 1986). Ultimately, the question of whether the evidence is sufficient to affirmatively link the accused to the contraband must be answered on a case-by-case basis. *Whitworth v. State*, 808 S.W.2d 566, 569 (Tex.App.–Austin 1991, pet. ref'd).

Appellant contends that evidence or links are absent or are insufficient to prove beyond a reasonable doubt that he had knowledge of the concealed marijuana and that he intentionally possessed it by exercising care, custody, control, and management of the marijuana found in the duffle bag. Specifically, Appellant contends that the fact that he was a passenger in the pickup truck and that he was present during a conversation that the detectives did not hear does not support an inference that he had knowledge and control of the marijuana. Further, the Appellant

points to the following factors: (1) Appellant allegedly made no "furtive gestures,"[1] (2) no drug paraphernalia were found on Appellant, (3) there was no fingerprint evidence linking Appellant to the marijuana, (4) Appellant was not in exclusive possession of the vehicle searched, (5) other persons had access to the vehicle, (6) Appellant made no incriminating statements, (7) Appellant made no attempt to escape or assault the officer, (8) there was no other contraband in plain view, (9) Appellant was not under the influence of drugs, (10) no drugs were found on his person at the time of his arrest, (11) no weapons were found in the vehicle or on Appellant's person, and (12) Appellant did not engage in any counter-surveillance.

Accepting the above points as true, but viewing the evidence in the light most favorable to the verdict, more than enough evidence existed on which a jury could have rationally found Appellant guilty beyond a reasonable doubt.

Appellant was observed suspiciously in the Whataburger parking lot exchanging a large heavy duffle bag. He was in close proximity to a duffle bag containing 24.60 pounds of marijuana. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex.Crim.App. 2005). The conversation between the man from the SUV and the pickup truck and hand off of the duffle bag occurred on the Appellant's side of the pickup truck. A jury could also have inferred that the Appellant's behavior at the time of the traffic stop was an indication of a consciousness of guilt. *See Poindexter*, 153 S.W.3d at 406.

A reasonable jury could have rationally concluded that, because of the suspicious activity in the Whataburger parking lot, Appellant's close proximity to the marijuana, and his behavior at the time of the traffic stop, he was not an unwilling and unknowing participant in a drug-dealing operation.

---

[1] But see his conduct, during the stop, of raising and lowering his arm several times.

Appellant points to several cases which stand for the proposition that mere presence at the time narcotics are discovered is not enough to show that the person knowingly or intentionally took care, or had custody, of the narcotics found. *See Humason v. State*, 728 S.W.2d 363, 365-67 (Tex.Crim.App. 1987)(holding that there was insufficient evidence to show that the defendant had knowledge that the substance found in an unzipped bag was narcotics), *overruled on other grounds by Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App. 1991), *overruled on other grounds by Paulson v. State*, 28 S.W.3d 570, 573 (Tex.Crim.App. 2000); *Randle v. State*, 828 S.W.2d 315, 318-19 (Tex.App.–Austin 1992, no pet.)(holding that it was not reasonable to infer from the evidence presented at trial that the appellant had knowledge of the cocaine found in his car); *Douglas v. State*, 842 S.W.2d 347 (Tex.App.–Tyler 1992, no pet.)(finding insufficient affirmative links to connect the driver of a leased van with cocaine found in a seat cushion); *Naquin v. State*, 607 S.W.2d 583 (Tex.Crim.App. [Panel Op.] 1980)(holding that there was no evidence that the appellant had any knowledge that marijuana was contained in the trunk of a car, the owner of which was not clear).

While the proposition that mere presence is never enough to convict someone of possession is true, the cases cited above and other mere presence type cases cited by Appellant are not factually or legally similar to the present case and can therefore be distinguished. *McGoldrick*, 682 S.W.2d at 578-79. "The 'affirmative links rule' is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs. This rule simply restates the common-sense notion that a person–such as a father, son, spouse, roommate, or friend–may jointly possess property like a house, but not necessarily jointly possess the contraband found in that house. Thus, we have formulated the rule that '[w]hen the accused is not in exclusive possession of the place where the substance is found, it cannot be

concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.'" *Poindexter*, 153 S.W.3d at 406, *citing United States v. Phillips*, 496 F.2d 1395, 1397 (5th Cir. 1974), *cert. denied*, 422 U.S. 1056 (1975); *United States v. Smith*, 930 F.2d 1081, 1086-87 (5th Cir. 1991); *Deshong*, 625 S.W.2d at 329.

The jury could reasonably have determined that the Appellant was not a mere innocent bystander to the drug transaction at the Whataburger parking lot. Rather, given Appellant's participation in the original conversation with the delivery man, his physical acceptance of the duffle bag from the delivery man, his close proximity to the marijuana at the time of the traffic stop, and his behavior during and immediately following the stop, they could reasonably have concluded that Appellant was not "merely present" where drugs were found, but rather was an active and knowing participant in a drug deal.

In the present case, undercover police officers actually observed what they believed to be a drug deal. While it is true that the detectives did not hear the conversation between the man from the SUV and the occupants of the pickup, the detectives did observe a large duffle bag being handed from the man from the SUV to the passenger in the pickup, who later turned out to be the Appellant. A jury could reasonably have inferred and determined, based on the suspicious activities in the Whataburger parking lot, that Appellant was every bit as involved in the activities as was the driver of the pickup. Further supporting a reasonable inference that the Appellant was involved is his strange behavior during the actual traffic stop. Officer Hiltl testified that the Appellant just stared at the windshield, never making eye contact with him. On the whole, the evidence in the present case is much different from the evidence found in the authorities cited by the Appellant, because in the majority of the Appellant's authorities no

surveillance had ever been conducted prior to the discovery of the narcotics. The surveillance by the detectives and their testimony of what was observed, along with the circumstantial links shown at trial, could have allowed a jury reasonably and logically to conclude that the Appellant was a knowing and willing participant in this narcotics transaction. Essentially, surveillance by the detectives put the discovery of the marijuana found in the duffle bag into perspective, as opposed to when drugs are found during a routine traffic stop.

Texas case law supports the jury's conclusion that the Appellant was in possession of the marijuana. As the State correctly points out, the presence of a large amount of contraband can be an indication that the accused knew of its presence and that it was not accidental. *Carvajal v. State*, 529 S.W.2d 517, 520-21 (Tex.Crim.App. 1975), *cert. denied*, 424 U.S. 926 (1976); *Hill v. State*, 755 S.W.2d 197, 201 (Tex.App.–Houston [14th Dist.] 1988, pet. ref'd). The duffle bag containing the marijuana was found between the driver's and passenger's seats. The jury could have inferred that Appellant's close proximity to the marijuana also indicated possession of it. *Poindexter*, 153 S.W.3d at 406; *Tucker*, 183 S.W.3d at 510; *Hahn v. State*, 502 S.W.2d 724, 725 (Tex.Crim.App. 1973). Based on Appellant's failure to make any eye contact and Officer Hiltl's testimony that he found this behavior odd, it is reasonable that the jury could have inferred that Appellant's behavior was an indication of guilt. *Fields v. State*, 932 S.W.2d 97, 104 (Tex.App.–Tyler 1996, pet. ref'd)(recognizing consciousness of guilt as a possible link); *Hurtado v. State*, 881 S.W.2d 738, 744 (Tex.App.–Houston [1st Dist.] 1994, pet. ref'd)(holding that jury could reasonably have found guilt based on the defendant's nervous behavior and other factors). Last, the State also points out that Officer Hiltl saw Appellant raising and lowering his arm several times, just before the traffic stop. The jury could rationally have inferred that the arm movement was a furtive gesture, one indicating that the Appellant was trying to hide the duffle

bag containing the marijuana or, perhaps, to stuff the marijuana packets back into it. *Williams v. State*, 784 S.W.2d 428, 429 (Tex.Crim.App. 1990)(holding that furtive gestures, like fidgeting in the back of a patrol car, could rationally have linked the defendant with narcotics later found in the seat of the patrol car). Looking at the totality of the evidence from the record and viewing the evidence in a light most favorable to the jury's verdict, it is reasonable that the jury could have found Appellant guilty of possession of marijuana.

We do not resolve any conflict of fact or assign credibility to the witnesses, as that was the function of the trier of fact. *See Adelman*, 828 S.W.2d at 421; *Matson*, 819 S.W.2d at 843. Instead, our duty is only to determine whether both the explicit and implicit findings of the trier of fact are rational, by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson*, 819 S.W.2d at 843.

We conclude that the direct and circumstantial evidence, when viewed in combination and its sum total, is sufficient to connect Appellant to the actual care, custody, control, or management of the marijuana found in the pickup. It is the logical force of the circumstantial evidence, not the number of affirmative links, that supports a jury's verdict. The logical force of the combined evidence in this case, along with reasonable inferences, is sufficient to establish, beyond a reasonable doubt, that Appellant exercised actual care, custody, control, or management of the marijuana.

Appellant's sole issue is overruled. We therefore affirm the conviction.


DAVID WELLINGTON CHEW, Chief Justice

January 22, 2009

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., not participating

(Do Not Publish)