COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MATTHEW JOHN CASANOVA, | § | |
| | | No. 08-10-00006-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | 163rd District Court |
| THE STATE OF TEXAS, | § | |
| | | of Orange County, Texas |
| Appellee. | § | |
| | | (TC# B-090255-R) |
| | § | |

**O P I N I O N**

A jury convicted Appellant, Matthew John Casanova, of possession of a controlled substance, cocaine, and sentenced him to confinement for one year. In three issues, Appellant complains of trial court error and insufficient evidence to support his conviction. Finding that the trial court's errors resulted in egregious harm to Appellant, we reverse the judgment below and remand the case for further proceedings.

**DISCUSSION**

*1. Error*

In his second issue, Appellant complains that the trial court erred when it failed to include in its jury charge an instruction regarding the accomplice-witness testimony of Esther Garza, Appellant's wife. A person who is susceptible to prosecution for the offense with which the accused is charged or for a lesser offense is an accomplice as a matter of law. *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004). At Appellant's trial, Garza testified that she, too, had been charged with possession of a controlled substance arising from the discovery of crack cocaine found

in her purse on January 3, 2007, and had pleaded guilty thereto. Therefore, Garza is Appellant's accomplice as a matter of law. *Id.*

When a witness is an accomplice as a matter of law, the trial court is required to provide an accomplice-witness instruction to the jury. *Cocke v. State*, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006), *cert. denied*, 549 U.S. 1287, 127 S.Ct. 1832, 167 L.Ed.2d 332 (2007). The State concedes that the trial court failed to instruct the jury on the law of accomplice-witness testimony as required by Articles 36.14 and 38.14, and Appellant concedes that trial counsel failed either to request the inclusion of the instruction or object to the absence of the instruction in the court's charge. TEX. CODE CRIM. PROC. ANN. arts. 36.14 (West 2007) and 38.14 (West 2005). The trial court's failure to instruct the jury on the law applicable to the case, that is, the accomplice-witness law, constitutes error. *Id.*; *see Howard v. State*, 972 S.W.2d 121, 125 (Tex. App. – Austin 1998, no pet.).

Our review of the record reveals that the trial court also erred when it failed to read its charge to the jury as required under Article 36.16. TEX. CODE CRIM. PROC. ANN. art. 36.16 (West 2006). Finding the trial court erred both in failing to read its charge to the jury as mandated by Article 36.16 and in failing to instruct the jury regarding the applicable accomplice-witness law applicable to the case, we must next determine whether Appellant was harmed by the trial court's errors. TEX. CODE CRIM. PROC. ANN. arts. 36.14, 36.16, and 38.14. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

*2. Harm Analysis*

Under Article 36.19, when the requirements of Articles 36.14 and 36.16, or other enumerated provisions, have been disregarded, "the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial." TEX. CODE CRIM. PROC. ANN. art. 36.19

(West 2006).

Because Appellant failed to object to the trial court's charge errors, reversal is proper only if the error is so egregious and created such harm that the defendant has not had a fair and impartial trial. *Almanza*, 686 S.W.2d at 171. No burden of proof or persuasion exists in a harm analysis conducted under *Almanza*. *Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008). Egregious harm results when errors affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive. *Almanza*, 686 S.W.2d at 172.

Because egregious harm is a difficult standard to prove, we determine on a case-by-case basis whether egregious harm has resulted from the errors. *Hutch v. State*, 922 S.W.2d 166, 172 (Tex. Crim. App. 1996). To determine whether Appellant was deprived of a fair and impartial trial, we will review the entire charge, the state of the evidence, including the contested issues and weight of probative evidence, counsels' arguments and other relevant information revealed by the trial record. *Almanza*, 686 S.W.2d at 171. We examine any part of the record as a whole which may illuminate the actual rather than theoretical harm to the accused. *Almanza*, 686 S.W.2d at 174. All jury charge error must be considered, whether or not the defendant preserved error. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003), *citing Almanza*, 686 S.W.2d at 171; *see also Saunders v. State*, 817 S.W.2d 688 (Tex. Crim. App. 1991).

A defendant is entitled to an accomplice-witness instruction in the jury charge if the issue is raised by the evidence, whether or not that evidence is weak, strong, unimpeached, or contradicted, and without regard to the trial court's opinion regarding the credibility of the evidence. *Cocke*, 201 S.W.3d at 748. The accomplice-witness rule reflects the Legislature's determination that accomplice-witness testimony should be viewed with some degree of caution. *Gill v. State*, 873

S.W.2d 45, 48 (Tex. Crim. App. 1994). The rule's purpose "is to assure that the jury does not consider the accomplice witness's testimony unless it finds that the accomplice witness is telling the truth and that other evidence corroborates the discredited witness's testimony." *Howard v. State*, 972 S.W.2d 121, 125 (Tex. App. – Austin 1998, no pet.), *citing McDuff v. State*, 943 S.W.2d 517, 520 (Tex. App. – Austin 1997, pet. ref'd). Thus, the rule requires that the jury "receive and act upon such testimony with caution, considering the selfish interests and possibly corrupt motives of the witness." *Howard*, 972 S.W.2d at 125. Moreover, the accomplice-witness instruction in the trial court's charge serves to remind the jury that it is not permitted to use accomplice-witness testimony to convict a defendant absent other non-accomplice testimony which ties the defendant to the offense. *Cocke*, 201 S.W.3d at 747, *citing Herron v. State*, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002).

To determine whether evidence is sufficient to corroborate accomplice testimony, we first eliminate from consideration the accomplice witness's testimony and examine the other inculpatory evidence to ascertain whether the remaining evidence independently "tends to connect" the defendant with the offense. *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim. App. 1997). However, the additional evidence must not merely show the commission of the crime. Tex. Code Crim. Proc. Ann. art. 38.14; *Cocke*, 201 S.W.3d at 747, *cert. denied*, 549 U.S. 1287, 127 S.Ct. 1832, 167 L.Ed.2d 332 (2007).

We judge the sufficiency of non-accomplice evidence according to the particular facts and circumstances of each case. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). The non-accomplice evidence constitutes sufficient corroboration if it shows that rational jurors could have found that it sufficiently tended to connect the defendant to the offense. *Smith*, 332 S.W.3d at 442. When there are two permissible views of the evidence - one tending to connect the defendant to the

offense and the other lacking such tendency - we will defer to the fact finder's resolution of the evidence. *Smith*, 332 S.W.3d at 442, *citing Simmons v. State*, 282 S.W.3d 504, 508 (Tex. Crim. App. 2009). Applying this test, we now consider the record before us to determine whether the failure to include the accomplice-witness instruction was so egregious as to have denied Appellant a fair and impartial trial. *Almanza*, 686 S.W.2d at 172; *Howard*, 972 S.W.2d at 127.

In reviewing the record, we note that the trial court's charge includes an instruction regarding the criminal responsibility of a person as a party to an offense. The following paragraph includes an instruction that "[a] person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense," and states that "[m]ere presence alone will not constitute one a party to an offense." However, there is no accomplice-witness instruction regarding the testimony of Garza.

Officer Hartman testified that he was dispatched to the hotel on an indecent exposure call and was directed to Appellant who was nearby and smoking a cigarette. Officer Hartman testified that Appellant appeared to be under the influence of a drug or alcohol, that his pupils were constricted, he wasn't making sense, and was paranoid, which he acknowledged could be caused by "other things," including a "mental episode." According to Officer Hartman, Appellant stated that he had been smoking cocaine and marijuana, that he had not exposed himself, that someone was trying to kill him, and that he was having problems with his wife. Officer Hartman stated that upon encountering an intoxicated person, he would need to arrest the individual or place him in the care of a sober adult, and after informing Appellant of this, Appellant noted that his wife was in a hotel room. After asking Appellant for his identification, Appellant told Officer Hartman that his identification was in Garza's purse, and he willingly led Officer Hartman to the hotel room where

Garza was located so that Officer Hartman could speak with her. Appellant invited Officer Hartman into the hotel room and introduced Garza, who was sitting against the back of the bed. Officer Hartman did not find any cocaine in plain view, did not smell the malodorous scent of smoked cocaine or marijuana in the hotel room, and he never testified that he found Appellant to be in possession of contraband or drug paraphernalia. Officer Hartman asked Garza if she had Appellant's identification in her purse and she informed him that she did not have a purse. Appellant then began yelling that Garza did have a purse and that she was hiding it behind her back beneath the pillow. Officer Hartman testified that he became more guarded as he was alone, he believed Appellant was "on drugs," he did not know if there were weapons or guns in the room, and he wondered why Garza would be hiding her purse. Officer Hartman asked Garza to stand up and, in response to Officer Hartman's question, admitted that there was a purse behind the pillow. Officer Hartman requested Garza's consent to check the purse for weapons because Appellant had stated that he had been smoking crack and marijuana and Officer Hartman assumed that Garza was hiding the purse for a good reason since she did not want him to see it. Officer Hartman testified that Garza granted permission for him to search her purse where he found marijuana and a white substance which he believed to be crack cocaine.

Officer Hartman admitted that he arrested Garza because he believed she had committed a crime and did not arrest Appellant on the possession charge but arrested him instead for an outstanding warrant. When tagging the contraband evidence, Officer Hartman initially placed both Appellant's and Garza's names on the marijuana and cocaine labels but scratched through Appellant's name because he did not charge Appellant with possession of a controlled substance that night, and then testified that he should have so charged Appellant because he was in the room, knew where Garza's purse was, and noted that Garza had informed him "that [Appellant] tries to get in her

purse all the time."

Accomplice-witness Garza's testimony established that she and Appellant had purchased cocaine earlier in the day after cashing her paycheck, that they had smoked cocaine during the day and in the hotel room using Appellant's cocaine pipe, and that Appellant was aware that cocaine was in the hotel room on the dresser. When Officer Hartman requested that Garza open the door, Garza stated that she stuffed the crack cocaine in her purse and hid it behind her back because she knew she had "the stuff" in her purse when Appellant asked her for his identification, and that is why she told Appellant in the officer's presence that Appellant had taken his wallet with him. Although admitting that she was guessing, Garza stated that Appellant knew that she puts everything in her purse, that her purse had been on the desk, and that neither her purse nor the crack were on the dresser any longer. She testified that Appellant did not see her put the crack inside her purse because he wasn't in the room at the time.

Appellant was indicted for felony possession of a controlled substance, cocaine. To obtain a finding of joint or sole possession of contraband, the State must prove two elements: (1) that the accused exercised care, control, and management over the contraband, and (2) that the accused knew the matter possessed was contraband. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985), *citing Wilkes v. State*, 572 S.W.2d 538, 540 (Tex. Crim. App. [Panel Op.] 1978). Both elements may be proven with circumstantial evidence and control may be shown by actual or constructive possession. *McGoldrick*, 682 S.W.2d at 578. "'Circumstantial evidence' has been defined as direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proven." *Watson v. State*, 861 S.W.2d 410, 412 (Tex. App. – Beaumont 1993, pet. ref'd). The State must introduce evidence of facts and circumstances which generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it. *Johnson v. State*, 658

S.W.2d 623, 627 (Tex. Crim. App. 1983).

When Garza's testimony is removed from consideration and we examine the non-accomplice testimony, we do not find that the evidence tends to connect Appellant with the offense of possession of cocaine. *See Smith*, 332 S.W.3d at 442; *McDuff*, 939 S.W.2d at 612. No cocaine was found until Officer Hartman entered the hotel room, observed Garza's suspicious behavior after being asked to produce Appellant's identification from her purse and based upon a heightened level of concern arising from Garza's false statement that she had no purse, then asked to search Garza's purse which contained the cocaine. The State did not introduce any evidence independent of Garza's testimony that independently linked Appellant to the cocaine, that showed that he exercised care, control, and management over the cocaine, or that demonstrated that Appellant knew the cocaine was located in Garza's purse. *McGoldrick*, 682 S.W.2d at 578.

Additionally, while Texas courts have found that other corroborating evidence such as attempted flight and furtive gestures may indicate the degree of significance to attach to a defendant's presence at the scene of an offense, here, Appellant did not attempt to escape, did not make furtive gestures, and beyond exhibiting a paranoia which related to a fear of being killed rather than a fear of being caught in the possession of contraband, Appellant did not act in any suspicious manner. *See Howard*, 972 S.W.2d at 127 (internal citations omitted). The independent non-accomplice evidence, at most, showed that Appellant was under the influence of cocaine or other substance or was perhaps suffering from a mental illness.[1]

Without Garza's testimony, there is no evidence to support Appellant's conviction for possession of cocaine and there is no evidence that independently corroborates Garza's testimony. Viewing the entirety of the evidence and record, there is no doubt that the State's case against

---

[1] Appellant presented testimony regarding his mental health.

Appellant relied substantially on the testimony of Garza. Garza's testimony was crucial to the jury's guilty verdict and any credible non-accomplice evidence tending to connect Appellant with the offense either does not exist or is exceedingly weak, permitting virtually no inference to connect Appellant to the possession of the cocaine in Garza's purse. Under the particular facts and circumstances of this case, we find that a correct jury charge containing the accomplice-witness instruction would have made the State's case significantly less persuasive, and that rational jurors could not have found that the non-accomplice evidence sufficiently tended to connect the defendant to the offense of possession of a controlled substance. *Smith*, 332 S.W.3d at 442, *citing Simmons*, 282 S.W.3d at 508.

Because the non-accomplice evidence was extremely weak and failed to tend to connect Appellant to the offense of possession of cocaine, because the State relied overwhelmingly upon the testimony of accomplice witness Garza in its attempt to link Appellant to the cocaine which was found in Garza's purse, and because we find that the accomplice-witness instruction was critical to the outcome of this particular case and that rational jurors would have found the State's case for conviction clearly and significantly less persuasive had they been properly instructed, we find that the trial court's error in failing to give the accomplice-witness instruction deprived Appellant of a fair trial and was, thus, egregious. *Almanza*, 686 S.W.2d at 171, 172.

We likewise find that the trial court's failure to read its charge to the jury resulted in egregious harm to Appellant. *Id.* at 171. As prescribed in applicable cases identified under Article 36.14, a trial judge is required, before arguments begin, to deliver a written charge to the jury distinctly setting forth the law applicable to the case. TEX. CODE CRIM. PROC. ANN. art. 36.14. The function of the court's charge is to instruct the jury on applying the applicable law to the facts of the case. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994); *Pesina v. State*, 949 S.W.2d

374, 383 (Tex. App. – San Antonio 1997, no pet.). Pursuant to Article 36.16, the trial court judge is also required to read his charge to the jury as finally written. TEX. CODE CRIM. PROC. ANN. art. 36.16. The purpose of reading the charge to the jury is to enable counsel to object to the instructions and ensure that each member of the jury actually receives the instructions in an unbiased and clear manner. *See United States v. Noble*, 155 F.2d 315, 316 (3rd Cir. 1946). A judge's failure to read a jury charge will not be reversed absent a finding that the defendant was deprived of a fair and impartial trial. TEX. CODE CRIM. PROC. ANN. art. 36.19; *Almanza*, 686 S.W.2d at 171; *Cordova v. State*, 698 S.W.2d 107, 114 (Tex. Crim. App. 1985), *citing Quinn v. State*, 164 Tex.Crim. 125, 297 S.W.2d 157 (1957).

There is no dispute that the trial court failed to read its charge to the jury, as the trial court specifically informed the jury:

> I'm going to give you two oral instructions. I could read you this whole charge out loud. I've found that's not real productive to just [sit] there and have me read all these pages. So what I'm going to instruct you [is] this: When you go back to begin your deliberations the first thing you need to do is elect a presiding juror. The second thing you need to do is the presiding juror, or a volunteer, will need to read the charge out loud in the jury room. You may think, "Well, what's the difference, you read out loud or we read it out loud." Well, back there you're going to be a lot more comfortable telling the reader, "Hey, slow down. Your mouth's moving faster than my ears are." Or [if] somebody coughs or moves a chair, you can say, "Hey, will you stop and start that paragraph over so I don't lose that part." It's just a lot more comfortable environment. Elect a presiding juror, the presiding juror or a volunteer reads the entire charge out loud and then and only then will you begin your deliberations.

In its closing argument, the State informed the jury:

> I want to take this time to talk to you a little bit about the Charge of the Court. And, of course, this is the document that you'll take back with you to the jury room. And once you elect your presiding juror you'll read the charge. That way you'll have the opportunity to kind of stop, ask questions and that kind of thing.

The State generally discussed the provisions of the court's charge during its closing argument, but

neither the trial court, the State, nor Appellant's trial counsel ever read the charge to the jury. Moreover, jury arguments are not a substitute for a proper jury charge. *Hutch v. State*, 922 S.W.2d 166, 174 (Tex. Crim. App. 1996). Jury arguments do not serve to instruct the jury on the law applicable to the case. *Id.*

The record here fails to show that each member of the jury panel received a duplicate copy of the final charge. The jury was not instructed to read the charge in open court. The jury was instead directed to select someone to read out loud the instructions outside the presence of the trial court after the conclusion of closing arguments. Consequently, neither Appellant nor the trial court had an opportunity to observe the members of the jury panel to determine whether they read the charge as instructed. Based upon the record before us, we cannot find that the jury was ever properly instructed regarding the proper application of the applicable law to the facts of the case regarding Appellant. For these reasons, having reviewed and considered the entire charge, the state of the evidence including the contested issues and the weight of probative evidence, counsel's arguments, and other relevant information revealed by the trial record, we find that Appellant was deprived of a fair and impartial trial and suffered egregious harm as a result of the trial court's failure to properly charge the jury. *Almanza*, 686 S.W.2d at 171.

Because we find that the trial court's errors singularly and cumulatively resulted in egregious harm to Appellant, Issue Two is sustained and we need not reach Appellants first and third issues.

## CONCLUSION

The trial court's judgment is reversed and the case is remanded for further proceedings.


GUADALUPE RIVERA, Justice

August 31, 2011

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)